1  KENNETH M. STERN

2  5850 Canoga Avenue, Fourth Floor
   Woodland Hills, Ca. 91367
3  (818) 716-1101

4
   Attorney for Plaintiff, In Propria Persona
5

6

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                    WESTERN DIVISION

10

11 KENNETH M. STERN,                    )  NO.   CV09 1986 DMG (PLAX)
                                        )
12              Plaintiff,              )  OPPOSITION TO MOTION FOR
                                        )  SUMMARY JUDGMENT
13                                      )
                                        )
14         v.                           )  Judge Dolly M. Gee.
                                        )  Mag. Judge Paul Abrams
15 ROBERT WEINSTEIN, SARA ANN           )
   WEINSTEIN,WHITE, ZUCKERMAN,          )  Date: December 10, 2010
16 WARSAVSKY, LUNA, WOLF & HUNT         )  Time: 2:00 p.m.
   LLP , VENITA MCMORRIS, BARBARA       )  Crtrm: 7
17 LUNA AND   DOES 2-4, 9-10,           )
                                        )  312 N. Spring Street
18              Defendants.             )  Los Angeles, Ca. 90012
                                        )
19                                      )
                                        )
20                                      )
                                        )
21 _____)

22 COMES NOW plaintiff in opposition to Robert Weinstein's Motion to for Summary

23 Judgment.  The opposition is based upon the grounds stated herein.

24 DATED: October 29, 2010            Respectfully submitted,
                                              S
25                                    _____
                                      KENNETH M. STERN, PLAINTIFF
26                                    PRO SE

27

28

## TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT.                                                        1

II. PLAINTIFF'S WRITING IS COPYWRITABLE PURSUANT TO          3
THE THIN COPYRIGHT THEORY WHICH PROTECTS PLAINTIFF'S
WRITING FROM, AS OCCURRED HEREIN, IDENTICAL COPYING.

   A.  Because the Copyright Office registered plaintiff's writing,          3
there is a presumption of copyrightable.  Registration shows plaintiff's
writing is not a mere phrase; as, pursuant to the C.F.R, which guides the
Copyright Office, the Copyright Office would not have registered plaintiff's
copyright, if it was a mere phrase.

   B.  A writing need only have  a minimal amount of creativity to be          4
copyrighted, a standard met by plaintiff's writing.

   C.  A question is copyrightable.                                             6

   D.  Plaintiff's writing is a sentence,  not a "phrase", as characterized          8
by defendant.  Even were it a phrase, phrases can be protected by the
copyright law.

   E.  Defendants' conduct was a breach of a licensing agreement, which          13
thus constituted a copyright violation.

   F.  Thin copyright protects against virtually identical copying.          17

III.  THERE IS NO LACK OF REMEDIES, AVAILABLE TO          19
PLAINTIFF, WHICH WOULD RESULT IN SUMMARY JUDGMENT
FOR DEFENDANT.

   A.  Injunctive relief.                                                       19

   B.  Actual damages.                                                          20

   1.  Loss incurred in correcting the problem is actual damages.          20

   2.  Actual Damages include pain and suffering and emotional distress.          21

IV.  ATTORNEYS FEES ARE NOT WARRANTED.          24

V.  CONCLUSION.          25

i

1

## TABLE OF AUTHORITIES

2 <u>FEDERAL AUTHORITY.</u>

3 (House Report no. 94–1476.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

4 17 U.S.C. 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5 17 U.S.C. 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

6 17 U.S.C. 504 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

7 28 U.S.C. 1498 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8 37 C.F.R. 202.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9 Federal Rules of Appellate Procedure, Rule 32.1 . . . . . . . . . . . . . . . . 17, 21

10 Alberto-Culver Co. v Andrea Dumon, Inc., 466 F.2d 705 (7th Cir. 1972) . . . . . . 14

11 Applied Innovations, Inc. v. Regents of University of Minnesota, 876 F.2d 626 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12 ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc., 402
13 F.3d 700 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14 Cooper v. F.A.A., 596 F.3d 538 (9th Cir., 2010)(Amended September 16, 2010.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15 Educational Testing Service v. Simon, 95 F.Supp.2d 1081 (C.D. Cal., 1999) . . . . 8

16 Educational Testing Services v. Katzman, 793 F.2d 533 (3rd Cir 1986) . . . . . . . . 7

17 Ets-Hokin v. Skyy Spirits Inc.,  333 F.3d 763 (9th Cir.  2003) . . . . . . . . . . . . . . 18

18 Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000) . . . . . . . . . . . . 4, 6

19 Express, LLC v. Fetish Group, Inc., 424 F.Supp.2d 1211 (C.D. Cal., 2006)
20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Express, LLC v. Fetish Group, Inc., 464 F.Supp.2d 965 (C.D. Cal., 2006)
21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

22 Falwell v. Penthouse Intl, Ltd., 521 F. Supp. 1204 (W.D. Va. 1981) . . . . . . . . . . 9

23 Feist Publications, Inc. v. Rural Telephone Service Co., 499 U. S. 340 (1991) . . . 5

24 Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505 (9th Cir.1985)
25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

26 Guimond v. Trans Union Credit Information Co., 45 F.3d 1329 (9th Cir.1995) . . 24

Harper Row, Publishers Inc v. Nation Enterprises, 471 U.S. 539 (1985)

27

28

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Dawson, 390 F.3d 1139 (9th 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re Frye, No. CC-08-1055-PaMkK (9th Cir. 08/19/2008) . . . . . . . . . . . . . . . . 21

In re George E. Dawson, 367 F.3d 1174 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 24

In re Microsoft Corporation Antitrust Litigation, 333 F.3d 517 (4th Cir. 2003) . . 16

Kehoe v. Fidelity Federal Bank & Trust, 421 F.3d 1209 (11th Cir. 2005) . . . . . . 24

Mackie v. Rieser, 296 F.3d 909 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mai Systems Corp. v. Peak Computer Inc., 991 F.2d 511 (9th Cir. 1993) . . . . . . 16

Mattel, Inc. v. MGA Entertainment, Inc., No. 09-55673 (9th Cir. 07/22/2010, as amended 10/21/2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

McMillian v. F.D.I.C., 81 F.3d 1041 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 24

Narell v. Freeman, 872 F.2d 907 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 12, 13

Neitzke et al. V. Williams, 490 U.S. 319 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 25

S.O.S. Inc. v. Payday Inc., 886 F.2d 1081 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . 16

Salinger v. Random House, Inc., 811 F.2d 90 (2d Cir. 1987) . . . . . . . . . . . . . 10, 11

Satava v. Richards, 323 F.3d 805 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 18

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Johnson, 256 F.3d 895 (9th Cir. 2001) (en banc) . . . . . . . . . . . 24

Walker & Zanger, Inc. v. Paragon Industries, Inc., 465 F.Supp.2d 956 (N.D. Cal., 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

West Publishing Co. v. Mead Data Central, Inc., 799 F.2d 1219 (8th Cir.1986) . 11

Xcentric Ventures, LLC v. Stanley, No. CV-07-954-PHX-GMS (D.Ariz. 01/16/2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

iii

## I. SUMMARY OF ARGUMENT.

"To be, or not to be, that is the question?"[1]

As the Copyright Office has issued a copyright registration for plaintiff's writing, plaintiff's writing is, prima facie, copyrightable. (Declaration of Kenneth M. Stern, "DKS", Exh. 2.)[2] Defendant has failed to rebut the presumption. To do so, he would have to show that (1) plaintiff did not write the writing,[3] and, (2) plaintiff did not apply some minimal creativity in creating his writing.[4] He cannot, because, plaintiff's writing is copyrightable, and is copyrighted, that is, he wrote the involved writing and applied the requisite minimal creativity in writing the writing. (DKS paras. 5-8.)

Plaintiff's work is a literary work as defined by 17 U.S.C. 101. A work is:

"'fixed' in a tangible medium of expression when its embodiment in a copy ... is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. ... "

A literary work is defined by 17 U.S.C. 101 as:

"Literary works' are works ... expressed in words ... regardless of the nature of the material objects ... in which they are embodied."[5]

Plaintiff's writing is a "work" expressed in words; thus, a copyrightable literary work.

Plaintiff's writing is the synthesis of his knowledge and investigation into the

---

[1]  Copyrightable?

[2]  This destroys defendants claim that plaintiff's assertion is writing is frivolous, which should result in an attorney's fees award.

[3]   Defendant does not contend that plaintiff's writing is not original; that is, defendant does not refute that the writing was written by plaintiff.

[4]  Defendant does not contend plaintiff did not use some creative effort, even if minimal, in creating the writing which is the subject of the copyright claim.

[5]  That the statute states a literary work is a literary work, no matter the medium in which it is created, dispels defendant's claim an email cannot be copyrighted.

1

matter which was the subject of his writing. (DKS paras. 5-8.)   A question is copyrightable.[6]  By defendant, Robert Weinstein's, admission, the process, in which plaintiff engaged, does lead to a copyrightable writing.   Weinstein writes:

> "'(w)hat is protected is the manner of expression, the author's analysis or interpretation of events,  the way he structures his material and marshals facts, his choice of words and the emphasis he gives to particular developments.' Salinger, supra, 811 F.2d at ...(Defendants Motion p. 5.)

As will be shown, plaintiff's writing, does exactly what defendant says is required.

Plaintiff  took his analysis and interpretation of events, then structured and marshaled his material facts, which was the subject of his analysis and interpretation, then structured such, in his words, based upon the particular developments. This resulted the manner in which plaintiff formulated his writing, in the form of the manner in which the question was presented,, in the particular matter, to inquire of others regarding the subject. (DKS, paras. 5-8.)

Plaintiff's writing is subject to copyright protection, even if, it is "thin" copyright protection. "Thin" copyright  protects a writing from copying, where the copy is a substantially identical copy of the matter copyrighted.  The copying, alleged, as was an identical copy of plaintiff's copyrightable writing; thus, it is entitled to protection under the "thin" copyright doctrine.

Regarding remedies, R. Weinstein claims plaintiff cannot show damages, thus the copyright claim fails.  Such is incorrect for a few reasons.  Even if plaintiff did not suffer damages, he is entitled to a remedy of an injunction prohibiting R. Weinstein from violating plaintiff's copyright(s) in the future.  Robert Weinstein is still a member of the CAALA listserv and still in a position to violate plaintiff's copyrights.

Also, damages are not, as claimed by R. Weinstein, limited to loss of profits or profits realized by defendant.  Damages include plaintiff's loss occasioned by the time,

---

[6]  R. Weinstein contends a "phrase" is not copyrightable.  However, assuming arguendo, for the moment, such is true, a sentence is more than a phrase.

effort and expense he has expended, to protect his rights in his copyright. Finally, actual damages include plaintiff's pain and suffering and emotional distress occasioned by R. Weinstein's violation of plaintiff's copyright rights.

## II. PLAINTIFF'S WRITING IS COPYWRITABLE PURSUANT TO THE THIN COPYRIGHT THEORY WHICH PROTECTS PLAINTIFF'S WRITING FROM, AS OCCURRED HEREIN, IDENTICAL COPYING.

A.   Because the Copyright Office registered plaintiff's writing, there is a presumption of copyrightable.  Registration shows plaintiff's writing is not a mere phrase; as, pursuant to the C.F.R, which guides the Copyright Office, the Copyright Office would not have registered plaintiff's copyright, if it was a mere phrase.

Plaintiff's writing is registered the by Copyright Office, which creates a presumption the writing is copyrighted, which shifts the burden, a burden defendant cannot meet herein, to prove plaintiff's writing is not copyrightable. Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000)("Ets-Hokin I") writes:

" ... certificate of registration from the U.S. Copyright Office entitled him to a 'rebuttable presumption of originality' ...  In moving for summary judgment, the defendants thus initially had the burden of showing the invalidity of EtsHokin's copyright:

" ... registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding ...  A certificate of copyright registration, therefore, shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights. ...  To rebut the presumption, an infringement defendant *must* simply *offer* some *evidence* or *proof* to dispute or deny the plaintiff's prima facie case of infringement.[7] ... (Id. at p. 1075)

" ... to overcome the presumption of validity, defendants must

---

[7] Defendant has submitted no "evidence" or "proof" plaintiff's registered writing is not copyrightable

demonstrate why the photographs are not copyrightable. This they have
failed to do, primarily because the degree of originality required for
copyrightability is minimal.*fn4" (Ibid) (emphasis added)

Defendant claims plaintiff's writing cannot be copyrighted because phrases
cannot be copyrighted.[8]  Aside from the obvious flaw in the assertion, since plaintiff's
writing is a sentence, not a phrase, the Copyright Office would not have issued the
copyright registration, if plaintiff's writing was a phrase, not subject to  copyright.

The Copyright Office, in determining whether to issue a copyright registration,
acts in accordance with 37 C.F.R. 202.1.  As noted in, ATC Distribution Group, Inc.
v. Whatever It Takes Transmissions & Parts, Inc., 402 F.3d 700, 709 (6th Cir. 2005)

"The Copyright Office will not register .. phrase, or expression , such as
the name of a product or service ... See 37 C.F.R. § 202.1 ... "

37 C.F.R. 202..1 writes:

"Material not subject to copyright.

The following are examples of works not subject to copyright and
applications for registration of such works cannot be entertained:

(a) Words and short phrases such as names, titles, and slogans ...;

(b) Ideas ... as distinguished from the particular manner in which they are
expressed or described in a writing; ...

Thus, in accordance with the rule, by which the Copyright Office is governed,
plaintiff's writing was not a non copyrightable phrase, idea separate from its
expression, or work containing no original authorship.

B.  A writing need only have  a minimal amount of creativity to be copyrighted,
a standard met by plaintiff's writing.

While an idea is not copyrightable, the expression of that idea is copyrightable.

---

[8]  As will be explained a phrase can be copyrighted, where it consists of a
complete thought.  What cannot be copyrighted is a mere descriptive phrase such as
"the cold, dark, night."

4

The creativity in expressing that idea is minimal. <u>Feist Publications, Inc.</u> v. <u>Rural Telephone Service Co.</u>, 499 U. S. 340 (1991) wrote, as noted in ss noted in, <u>Ets-Hokin</u> v. <u>Skyy Spirits, Inc.</u>, supra, 225 F.3d at p. 1076:

> " ... sine qua non of copyright[ability] is originality' and that '[o]riginal, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some *minimal degree of creativity*. Id. at 345 ... " (emphasis added.)[9]

> "*Feist* ... described the *requisite degree of creativity as 'extremely low; even a slight amount will suffice.* The *vast majority of works make the grade* quite easily, as they *possess some creative spark,* `*no matter how* crude, humble or *obvious*' it might be." (emphasis added.)

Creativity is involved in taking various information and then deciding how to take that information and present such. <u>Feist Publications, Inc.</u> v. <u>Rural Telephone Service Co.</u>, supra, 499 U. S. at p. 348 wrote, in this regard:

> "The ... author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws ..."

This is what plaintiff did. (DKS paras. 5-8.)

As noted in, <u>Ets-Hokin</u> v. <u>Skyy Spirits, Inc.</u>, supra, 225 F.3d at p. 1077, in determining photographing a bottle has the minimal creativity for a valid copyright:

> "In view of the *low threshold for the creativity element*, and *given that the types of decisions Ets-Hokin made about lighting, shading, angle,*

---

[9]  Defendant does not dispute writing possesses minimal degree of creativity.

5

*background, and so forth* have been recognized as sufficient to convey copyright protection ...  although EtsHokin took photos that undoubtedly resemble many other product shots of the bottle--straight-on, centered, with back lighting so that the word 'Skyy' on the bottle is clear--the potential for such similarity does not strip his work of the modicum of originality necessary for copyrightability. ... "

Et-Hokins I also wrote, regarding the minimal amount of originality required: " ... Given the Copyright Act's low threshold for originality generally and the minimal amount of originality required to qualify a photograph in particular, we conclude that Ets-Hokin's photographs are entitled to copyright protection." (Emphasis added) (Id. at p. 1071.)

"Skyy  argues ....commercial photographs of its vodka bottle are not worthy of copyright protection. We disagree. The *essence of copyrightability is originality of artistic, creative expression.* Given the *low threshold for originality under the Copyright Act,* ...  Ets-Hokin's product shots of the Skyy vodka bottle are original works of authorship entitled to copyright protection. ... " (Id. at p. 1073.)

Plaintiff's writing is not just an idea.  It is the resulting creative expression of information he compiled, and analysis made,  whether McMorris/White Zuckerman churned or over billed the case for which plaintiff  hired them. (DKS paras. 5-8.) Defendant failed to attempt, in his undisputed statement of facts, or otherwise, to dispute plaintiff's writing was not just a fact, or idea, but rather,  a product of plaintiff's analysis, investigation and choice of how to draft the involved writing.

C.  A question is copyrightable.

The federal circuits are in harmony that a question is copyrightable. Educational Testing Services v. Katzman, 793 F.2d 533 (3rd Cir 1986) held:

" ... While the limited number of ways a concept can be addressed may be relevant to the extent of copying permitted, it does not render an

6

original expression per se incapable of copyright protection. As we stated in Apple Computer, "If other methods of expressing that idea are not foreclosed as a practical matter, then there is no merger." 714 F.2d at 1253. (Id. at pp. 539-540.)

" ... We need not define the limits of the merger principle in this case. It is apparent on the face of the materials that ETS' questions do not represent the only means of expressing the ideas thereon.

" Defendants' other objection to ETS' copyright is their claim that the material is in the public domain and that in entering the injunction, the district court accorded protection to ideas, which the Copyright Act does not protect, see 17 U.S.C. 102(b), rather than expressions of ideas, which are protected. This argument is unpersuasive. ETS' *questions are "original works of authorship"* within the meaning of the copyright laws. 17 U.S.C. Sec. 102(a). See Association of American Medical Colleges v. Mikaelian, 571 F.Supp. 144, 150 (E.D.Pa.1983) (medical school admission test), aff'd, 734 F.2d 3 (3d Cir.1984); National Conference of Bar Examiners v. Multistate Legal Studies, Inc., 495 F.Supp. 34, 36 (N.D.Ill.1980) (bar examination), aff'd in part, rev'd in part, 692 F.2d 478 *(7th Cir.1982)*, cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983)."(Id. at p. 539.)(emphasis added.)

Educational Testing Service v. Simon, 95 F.Supp.2d 1081 (C.D. Cal., 1999) wrote, relying upon Katzman:

" ... . ETS owns the copyright in each of the questions. See Katzman, 793 F.2d at 539; ...(' copyright in a compilation of questions, such as the Foreign Service Exam, includes *copyright protection for the questions themselves. '*)(Id. at p. 1087)(emphasis added)

If a question is copied, in a substantially similar matter, there is a copyright violation, even if the copying is not verbatim, as written in Simon, referencing Katzman.  Herein,

1   the copying was verbatim.

2   " ...  Substantial similarity does not require verbatim copying; ... cannot

3   escape  copyright  liability  by  claiming  that  its  copying  of  secure  test

4   *questions* is not word-for-word. ETS v. Katzman, 793 F.3d at 541. ...

5   ... defendants have copied the creative 'heart' of each infringed question.

6   ... see also Katzman, 793 F.2d at 542-43 (holding that copying of even a

7   few test questions was sufficient to justify a preliminary injunction against

8   copying of any ETS test). (Id. at p. 1088.)

9   "Defendants have infringed plaintiff's *copyrights in* MSAT *questions*.

10   "As the Supreme Court has noted, while a selection must be original and

11   creative  to  warrant  protection,  *'the  originality  requirement  is  not*

12   *particularly  stringent....  [It]  requires  only  that  the  author  make  the*

13   *selection  or  arrangement  independently  (i.e.,  without  copying  that*

14   *selection  or  arrangement  from  another  work),  and  that  it  display  some*

15   *minimal level of creativity." Feist* ..." (Id. at pp. 1098-1099.)

16   "Bornstein is also contributorily liable for Simon's acts because he knew

17   that she distributed ETS test *questions* .. " (Id. at p. 1089.)

18   Plaintiff's writing is a question derived from his knowledge, investigation and

19   synthesis into  a  particular  form  of  posing  the  issue  of  whether  McMorris/White

20   Zuckerman are involved in either churning and/or over billing.

21   D.   Plaintiff's  writing  is  a  sentence,   not  a  "phrase",  as  characterized  by

22   defendant.  Even were it a phrase, phrases can be protected by the copyright law.

23   R. Weinstein heavily relies upon Falwell v. Penthouse Intl, Ltd., 521 F. Supp.

24   1204 (W.D. Va. 1981) for the proposition a phrase or ordinary words cannot be

25   copyrighted.  Falwell does not even involve a claim for violation of copyright under the

26   Copyright Act!  Rather, it involved a claim for common law copyright infringement.

27   Also, Falwell did not involve a writing.  Rather, it involved an oral interview; and, said

28

8

nothing about concrete or out of the ordinary phrases.[10]

Applied Innovations, Inc. v. Regents of University of Minnesota, 876 F.2d 626 (8th Cir. 1989) held a sentence can be copyrighted; as, it can be original and have a minimal amount of creativity. The Court rejected the notion they could not be copyrighted as they were short phrases. The Court framed the issues, as follows.

" ... district court held that the MMPI test statements could be copyrighted. The test statements are for the most part short, simple, declarative sentences, such as 'I am a good mixer.' and 'No one seems to understand me.' The district court held that the authors had used sufficient creativity and originality in drafting the test statements or in revising the questions and statements used in earlier psychometric tests.

" Defendant argues the district court erred in holding that the MMPI test statements and testing data could be copyrighted. Defendant argues the test statements cannot be copyrighted because they are 'short phrases' within the meaning of 37 C.F.R. Sec. 202.1(a) ...

" ...      Defendant's first argument is that the test statements are not copyrightable because they lack originality. The standard for 'originality' is minimal. It is not necessary that the work be novel or unique, but only that the work have its origin with the author--that it be independently created. Little more is involved in this requirement than a prohibition of actual copying.' (Id. at pp. 634-635.)

It is not contested that plaintiff's writing was written by plaintiff.

Applied Innovations continues, regarding creativity.

"To be the original work of an author, a work must be the product of

---

[10]  Salinger v. Random House, Inc., 811 F.2d 90 (2d Cir. 1987) as known by defendant, as he cited such in his brief, knows the Copyright Act of 1976 preempted common law copyright, notes "the 1976 Copyright Act preempted the common law of copyright"  **Thus, said defendant knows Falwell could not possibly apply herein.**

some 'creative intellectual or aesthetic labor.' However, "a very slight
degree of such labor[,] ... almost any ingenuity in selection, combination
or expression, no matter how crude, humble or obvious, will be sufficient"
to make the work copyrightable." (See also West Publishing Co. v. Mead
Data Central, Inc., 799 F.2d 1219, 1223 (8th Cir.1986).)

As explained, plaintiff's writing, is the product of his creative intellectual labor.

Applied Innovations, Inc. v. Regents of University of Minnesota, supra, 876 F.2d
at pp. 635-636 concludedin holding the sentences were copyrightable and were
expressions of facts, not the facts themselves:

" ... test statements satisfy the minimal standard for original works of
authorship ... are recognizable as the work of the authors and thus are
sufficiently original to warrant copyright protection ...

"second argument is ... test statements ... cannot be copyrighted because
they are facts or methods or processes for discovering facts.

"This is particularly true of factual works. 'Because authors who wish to
express ideas in factual works are usually confined to a 'narrow range of
expression ..., similarity of expression may have to amount to verbatim
reproduction or very close paraphrasing ... .' "

" ... MMPI testing data ... do not represent pure statements of fact or
psychological theory; they are instead original expressions of those facts
... as applied and as such are copyrightable. ..."

Defendant contends, based upon Salinger v. Random House, Inc., supra, 811
F.2d 90, 94,cliches are not copyrightable.  Plaintiff's writing is not a cliche.  Salinger
supports the fact plaintiff's writing is copyrightable.  Salinger involved whether fair use
was made of a writing.  Salinger found alleged cliches or ordinary word combinations,
involved, although not always copyrightable, can be copyrightable.  The distinction is
if the phrase expresses a full thought, it is copyrightable.  If it is merely a descriptive
phrase, such as, "he mud was thick" it is not.

"The District Judge rejected Salinger's claim of infringement as to several passages of the letters because they 'employ[ed] a cliche or a word-combination that is so ordinary that it does not qualify for the copyright law's protection.' ... a cliche or an 'ordinary' word-combination by itself will frequently[11] fail to demonstrate even the minimum level of creativity necessary for copyright protection ... *such protection is available for the 'association, presentation, and combination of the ideas and thought which go to make up the [author's] literary composition."* ' ... protected is the manner of expression, the author's analysis or interpretation of events, the way he structures his material and marshals facts, his choice of words and the emphasis he gives to particular developments.' ...[12] The 'ordinary' *phrase* may enjoy no protection .. its *use in a sequence of expressive words does not cause the entire passage to lose protection ...* though the 'ordinary phrase may be quoted without fear of infringement, a copier *may not quote or paraphrase the sequence of creative expression* that includes such a phrase.

"In almost all of those instances where the quoted or paraphrased passages from Salinger's letters contain an 'ordinary phrase, the passage as a whole displays a sufficient degree of creativity as to sequence of thoughts, choice of words, emphasis, and arrangement to satisfy the minimal threshold of required creativity. And in all of the instances where that minimum threshold is met, the Hamilton paraphrasing tracks the original so closely as to constitute infringement."  (Id. at p. 98.)

Narell v. Freeman, 872 F.2d 907 (9th Cir. 1989) for which defendant claims ordinary phrases are not entitled to copyright protection is of no aid to defendant.

---

[11]  Frequently of course means not always.

[12]  See DKS paras. 5-8.

11

<u>Narell</u>'s reference to ordinary phrases not being copyrightable merely related to short descriptive phrases, which is not involved herein.[13]

> "Ordinary phrases are not entitled to copyright protection. ...
> ...Alberto-Culver ... (denying protection to advertising phrase 'most
> personal sort of deodorant) ... for factual work to be accorded protection,
> form of expression must evidence originality);"(<u>Id</u>. at p. 911.)

Rather, noting <u>Salinger</u>, <u>Narrel</u> wrote a phrase, which reflects a complete idea, is copyrightable, while phrase which does not convey a complete idea might not be.

> "*Salinger* ... finding highly original expressions infringed by paraphrases;
> e.g., writing of Wendell Wilkie, Salinger's statement 'He looks to me like
> a guy who makes his wife keep a scrapbook for him' paraphrased by
> infringer as '[Salinger] had fingered [Wilkie] as the sort of fellow who
> makes his wife keep an album of his press clippings.' ...  (Ibid)
> " ... phrases Freeman copied ...commonly-used expressions, such as
> describing a group of family relationships as a 'taggering network,'a
> muddy street as a 'cow path' or a river bank populated by sluggish,
> broad-headed loricates as 'crawling with alligators.' (<u>Id</u>. at p. 911.)

<u>Narell</u> then held even a short phrase can be copyrightable.

> "Narell argues that Freeman copied the expressive elements of Our City
> as well as its facts. ... Narell's counsel quoted the following lines to
> support the point that an author can describe history expressively:

---

[13]   <u>Narrell</u> found what was copied was merely factual information and a few short, incomplete phrases, being " Freeman did copy a few phrases from Narell: rekindle old memories,' 'staggering network,' 'river wound its way between muddy banks crawling with alligators,' 'hordes of gold seekers,' 'pitched overboard,' 'cow path,' 'shanties and corrugated [iron/steel] shacks ... were crowded together,' and beach was strewn with boxes, bales.')" which were not copyrightable. (<u>Id</u>. at p. 911.) These short descriptive phrases are qualitatively different from plaintiff's writing, which reflected the requisite creative element in the synthesis plaintiff's investigation and analysis, then taking such and formulating the writing.

1    Listen, my children, and you shall hear

2    Of the midnight ride of Paul Revere,

3    On the eighteenth of April, in Seventy-five;

4    Hardly a man is now alive

5    Who remembers that famous day and year. ...

6    "... Although we agree that the direct copying of all of the above lines,

7    or *even of the first two lines, might constitute infringement if the original*

8    *held a valid copyright registration*, the case presented here is not

9    identical. ... " (Id. at p. 912.)

10   Herein, there was no paraphrasing.   A verbatim copy of plaintiff's writing was copied

11   and distributed for the purposes of trying to held plaintiff and his client's adversary,

12   regarding the billing sent to plaintiff, regarding his client's case.

13       Alberto-Culver Co. v Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir. 1972)

14   does not help defendant.   In that case, a mere phrase "most personal sort of deodorant"

15   and some instructions and mere descriptions were not copyrightable.   That is not what

16   is involved herein.   Salinger, as previously quoting Alberto-Culver herein, rejected the

17   notion that Albert-Culver precludes a short complete thought, derived by the creativity

18   of the writer, from being copyrightable.   Herein, a complete thought/sentence is written.

19       E.   Defendants' conduct was a breach of a licensing agreement, which thus

20   constituted a copyright violation.

21       The CAALA listserv confidentiality agreement is a license wherein persons,who

22   have signed the confidentiality agreement, pertaining to the list, and are listserv

23   members,may copy a writing, posted to the listserv, so long as that writing is also only

24   posted to the listserv.   When someone writes an email, to the listserv, someone may

25   respond, on the listserv, which said response, may, include the original email.

26   However, that license, to copy the email, does not extend to allow someone to copy

27   and distribute an email, posted to the listserv, to someone who has not signed the

28   listserv agreement, for example, White, Zuckerman, that is not a listserv member and

not a CAALA attorney member.  The limitations on copying and distribution, state:

"The primary purpose of the CAALA Listsery is for CAALA members to exchange, with each other and *in confidence*, important information about references and background of experts, judges, arbitrators, mediators, case evaluation information, recent developments in the law, court rules, strategies, tactics and other attorney work product information. ...

**"11.   You agree, as a condition of membership in the CAALA Listserv, to take all reasonable action as an attorney to *protect the confidentiality* of any or all messages you receive or post on the Listserv ...**

"CAALA Listsery Joint Prosecution and *Confidentiality Agreement*

I understand that the information and discussion on this Listsery is the core work product of individual attorney members of the Consumer Attorneys Association of Los Angeles, (CAALA) containing the mental impressions and opinions of counsel. Information and discussion on this Listsery is being shared with other members of the Consumer Attorneys Association of Los Angeles pursuant to this Joint Prosecution and *Confidentiality Agreement* among counsel for the limited purpose of use in the prosecution of various tort actions, and joint consultation on common questions of law and fact. *Such information and communications MAY NOT be disclosed to non-members of CAALA or to any other entity who is not a party to this Joint Prosecution Agreement.*

"I agree, as a *condition of membership* in the CAALA Listserv, to **take all reasonable action as an attorney to protect the confidentiality of any or all messages I receive or post on the Listserv,**

"I certify that I have read the CAALA Joint Prosecution Agreement and

understand its terms and conditions, and *I agree to comply with all such terms and conditions*." (Exh. 1)(emphasis added)

S.O.S. Inc. v. Payday Inc., 886 F.2d 1081 (9th Cir. 1989) held when a copying occurs, in breach of a licencing agreement, a copyright infringement occurs. Herein, Robert Weinstein was given a license to copy plaintiff's writing for the purpose of responding to such or otherwise copy such within the parameters of posting any copy solely within the parameters of the CAALA listserv. The license did not include, and specifically precluded, plaintiff's writing being from being copied and distributed outside the CAALA listserv, as was done.

"The district court erred in assuming that a license to use a copyrighted work necessarily precludes infringement. *A licensee infringes the owner's copyright if its use exceeds the scope of its license. ...  The critical question is* not the existence but *the scope of the license* (Id. at p. 1087.) The license must be construed in accordance with the purposes underlying federal copyright law. ...  Chief among these purposes is the protection of the author's rights. ... " (Id. at p. 1087.)

The license granted by the CAALA confidentiality agreement, and limitations, were for the purpose of protecting plaintiff's right in his writing.

" ... Payday exceeded the scope of its license when it copied ...the programs without S.O.S.'s permission.   ..." (Id. at p. 1089.)

So too, R. Weinstein exceeded the license given him when he copied and distributed plaintiff's writing, outside of the CAALA listserv.

Mai Systems Corp. v. Peak Computer Inc., 991 F.2d 511 (9th Cir. 1993):

"However, MAI software licenses do not allow for the use or copying of MAI software by third parties such as Peak. Therefore, any 'copying' done by Peak is 'beyond the scope' of the license. ... " (Id. at p. 517.)

In re Microsoft Corporation Antitrust Litigation, 333 F.3d 517 (4th Cir. 2003) wrote:

"We agree that Microsoft's alternative methods of distribution ...

exceeded the limited scope of the license granted in the Settlement Agreement." (Id. at p. 535)

Harper Row, Publishers Inc v. Nation Enterprises, 471 U.S. 539, 565 (1985) noted copyright violation occurred as a result of a breach of a confidentiality agreement.

" ...Mr. Ford's manuscript, the copyright holders' interest in confidentiality is irrefutable; the copyright holders had entered into a contractual undertaking to 'keep the manuscript confidential' and required that all those to whom the manuscript was shown also 'sign an agreement to keep the manuscript confidential.'

Plaintiff's writing was not just an ordinary email.   It was a writing which was subject to a contractual license, the license prohibiting its copying for purposes of providing such to someone who was not subject to the confidentiality agreement.  Not all emails are subject to such license or limitations.  Defendant provides no precedent for the contention that an email may not be copyrighted.  Xcentric Ventures, LLC v. Stanley, No. CV-07-954-PHX-GMS (D.Ariz. 01/16/2009)[14] held that a short writing posted to a website is copyrightable.  As previously noted 17 U.S.C. 101 definition of "literary work" states that the medium in which the work is written does not reflect whether or not it is copyrightable.

Robert Weinstein was given a limited license pursuant to which he could copy and/or distribute plaintiff's writing.  He violated that license.  As such, his conduct constituted a copyright violation.

---

[14]  Federal Rules of Appellate Procedure, Rule 32.1 states, "(a) ... court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been;  (i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and, (ii)  issued on or after January 1, 2007.

16

F.  <u>Thin copyright protects against virtually identical copying.</u>[15]

Thin copyright is a concept whereby, although a writing is limited in its copyright protection, it is protected from virtually identical copying.  <u>Ets-Hokin</u> v. <u>Skyy Spirits Inc.</u>, 333 F.3d 763 (9th Cir.  2003) described protection afforded by a thin copyright.

> " ... a 'thin' copyright, which protects against only virtually identical copying. See Apple, 35 F.3d at 1442 (9th Cir. 1994). ... '[w]hen the range of protectable expression is narrow, the appropriate standard for illicit copying is virtual identity.' Id. at 1439." (<u>Id</u>. at p. 766.)

Thus, even if the protection for plaintiff's writing is narrow, it is protected from virtually identical copying.  Defendant admits plaintiff's writing was exactly copied. After <u>Ets-Hokin</u> was decided, <u>Satava</u> v. <u>Richards</u>, 323 F.3d 805 (9th Cir. 2003) wrote:

> " ... Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright  that protects against only virtually identical copying. See Ets-Hokin, ___ F.3d at ___ (9th Cir. 2003) ('When we apply the limiting doctrines, subtracting the unoriginal elements, Ets-Hokin is left with . . . a 'thin' copyright, which protects against only virtually identical copying."); Apple, 35 F.3d at 1439 ('When the range of protectable expression is narrow, the appropriate standard for illicit copying is virtual identity.").(<u>Id</u>. at p. 812.)

<u>Mattel, Inc.</u> v. <u>MGA Entertainment, Inc.</u>, No. 09-55673 (9th Cir. 07/22/2010, as amended 10/21/2010) recently discussed thin copyrights, noting virtual copying violates a thin copyright.

> "Given that others may freely copy a work's ideas (and other unprotectable elements), we start by determining the breadth of the

---

[15]  <u>Falwell</u>, <u>Salinger</u>, <u>Narrell</u>, <u>Alberto Culver</u>, were decided before the "thin copyright" principle was promulgated.

17

possible expression of those ideas. If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work. See id. at 1439, 1146-47. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe. See id.; Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression). (Id. at p. 17338.)

"The expression of an ... fashion doll with exaggerated proportions is thus highly constrained. ...Because of the narrow range of expression, the preliminary sculpt is entitled to only thin copyright  protection against virtually identical copying. Cf. Ets-Hokin v. Skyy Spirits Inc., 323 F.3d 763, 766 (9th Cir. 2003) (photo of vodka bottle merits only thin protection because of limited range of expression); Satava, 323 F.3d at 812 (similar). " (Id. at p. 17341.)

In an opinion, joined in by now Supreme Court Justice, Sotomeyer, the Second Circuit noted the thin copyright concept, in Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 (2d Cir. 2003).

"Fn. 11 ... ([Where the quantum of originality is slight and the resulting copyright is 'thin,' infringement will be established only by combination of these two rugs is an expression, albeit one protected by a thin copyright. Cf. very close copying . . . ."). (Id. at p. 135,)

Walker & Zanger, Inc. v. Paragon Industries, Inc., 465 F.Supp.2d 956 (N.D. Cal., 2006) involved protection, pursuant to the thin copyright doctrine, of some additions to designs.

18

> "plaintiffs copyrights on the original elements in the Romanesque,
> Treillage and Fleur de Lis designs are 'thin,' comprising no more than
> plaintiffs original contribution to ideas already in the public domain. ...
> plaintiffs copyrights only protect against virtually identical copying.
> See Ets-Hokin v. Skyy Spirits Inc. ...   "

Express, LLC v. Fetish Group, Inc., 424 F.Supp.2d 1211, 1226 (C.D. Cal., 2006) held an embroidery was entitled to a thin copyright, which:

> "';protects against only virtually identical copying'" Id. The Ninth
> Circuit's ... concern in Satava appeared to be the threat of copyright
> protection expanding to the point of providing a monopoly on
> commonplace expressions or expressions that are driven more by the
> limitations of the medium or the subject than by creativity." ... the
> scope of the protection may not be broad, but thin, the thin copyright
> still protects against virtually exact copying." (Accord Express, LLC
> v. Fetish Group, Inc., 464 F.Supp.2d 965 (C.D. Cal., 2006).)

While plaintiff cannot prevent defendants from using the concepts of White, Zuckerman/McMorris churning cases or over billing, plaintiff's copyright does protect him against virtual copying, of his writing, occurring herein.

**III.  THERE IS NO LACK OF REMEDIES, AVAILABLE TO PLAINTIFF, WHICH WOULD RESULT IN SUMMARY JUDGMENT.**

    A.  Injunctive relief.

    Defendant complains plaintiff cannot prevail in a copyright action because he has no damages.  Even were that true, which it is not, such is irrelevant.  Plaintiff has a right to seek injunctive relief.  17 U.S.C. 502 provides:

> "(a) Any court having jurisdiction of a civil action arising under this
> title may, subject to the provisions of section 1498 of title 28[16], grant
> temporary and final injunctions on such terms as it may deem

---

[16] 28 U.S.C. 1498, applying to infringement by the government, is inapplicable.

reasonable to prevent or restrain infringement of a copyright."

Robert Weinstein is still a member, and subject to being a member, of the CAALA listserve. (DKS para. 3.)  As such, he continues to present a danger of violating plaintiff's copyrights in his postings, to the listserve.  As such, regardless of whether plaintiff has any damages, he has the remedy of injunctive relief.

B.  Actual damages.

1.  Loss incurred in correcting the problem is actual damages.

In re Frye, No. CC-08-1055-PaMkK (9th Cir. 08/19/2008)[17], confirmed a copyright award actual damages award, which was based upon the loss the victim sustained in correcting the problem.  Count IV was the copyright count.

> "One indication of the jury's belief that the conduct under Counts IV
> and VI were the same is the direct link between the jury's actual
> damage award in Count VI and the actual damage award in Count IV.
> Originally, the jury was instructed that actual damages  recoverable
> under Count VI are Excelsior's *'losses sustained by reason of
> Defendant's improper conduct."* ...  The jury awarded ... *in actual
> damages  under Count VI.* This amount is *precisely the same as the
> amount Excelsior alleged was needed to replace the six nursing
> examinations. It is also precisely the same amount awarded by the
> jury for actual damages under Count IV.* The district court judge later
> struck the actual damages  awarded by the jury under Count VI,
> observing that 'Plaintiff has failed to suggest any theory under which
> this Court could find that the actual damages awarded on Count IV
> copyright infringement of examination questions are not duplicative ...
> awarded on Count VI trade secret misappropriation.'

Plaintiff has been required to spend $795.00 to register his copyright, in an effort to the problem and has spent time, in value of at least $1.00 in such protection.

---

[17]  Federal Rules of Appellate Procedure, Rule 32.1.

20

2.  <u>Actual Damages include pain and suffering and emotional distress.</u>[18]

Defendant claims because plaintiff has suffered no loss of profits, nor did defendant gain any financial profits, the can be no "actual damages." While it is true, the case law focuses on these damages, it is not correct these are the only type of actual damages recoverable.  Actual damages can include pain and suffering and emotional distress.  Congress has provided that actual damages refers to actual loss. Loss is not limited to financial loss.  Loss includes pain and suffering and emotional distress, recoverable as actual damages. (See DKS para. 13-14.)

<u>Cooper</u> v. <u>F.A.A.</u>, 596 F.3d 538 (9th Cir., 2010)(Amended September 16, 2010) indicates that Courts should look to legislative history in determining how a statute is to be interpreted, particularly the phrase "actual damages."

"meaning of actual damages is a matter of statutory interpretation.

"Our search for Congress's intent begins with "the plain meaning of the language in question." ...  is no ordinary or plain meaning of the term actual damages because it is a legal term of art. (<u>Id</u>. at p. 544.)

" ... no plain meaning to the term actual damages, as used in the Act, we next consult the term in its statutory context, looking to the language of the entire statute, its structure, and purpose. *See Nadarajah v. Gonzales*, 443 F.3d  1069, 1076 (9th Cir. 2006) ('[I]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' ... (<u>Id</u>. at p. 545.)

"Congress articulated a clear purpose behind the Act, stating  ... (Ibid)

"The statutory text itself is the 'authoritative statement' of a statute's

_____

[18]   There is virtually, if not literally no, non dicta caselaw dealing with this concept.   Typically copyright actual damages cases discuss financial damages. However, although they discuss such, the issue of whether actual damages might also include damages for pain and suffering or emotional distress.  It is axiomatic, since the cases do not discuss such issue, they cannot be held to preclude such damages.

meaning. .... However, courts can and do consult extrinsic materials, such as legislative history, for guidance in construing an ambiguous statute. ... ('[W]e repeatedly have looked to legislative history ...  when required to interpret a statute which is ambiguous[.]).

But courts resort to extrinsic materials 'only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms. ... " (Id. at p. 547.)

17 U.S.C. 504 (b), regarding actual damages, states:

"(b)  Actual Damages and Profits.— The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, **and** any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." (emphasis added)

The legislature determined that actual damages means actual loss.  The legislative history, for 17 U.S.C. 504 (b), regarding actual damages, states:

"Actual Damages...In allowing the plaintiff to recover 'the actual damages ... section 504 (b)  recognizes the different purposes served by awards of damages and profits. Damages are awarded to compensate the copyright owner for *losses* from the infringement, ...

"(House Report no. 94–1476.) (emphasis added)

In re Dawson, 390 F.3d 1139 (9th 2004) notes a distinction between loss in general and "financial loss", in regards to a Congressional legislative history.  It determined loss, which is broader than financial loss, can include emotional distress.

"Reading the *legislative history* as a whole ... *Congress* was concerned not only with *financial loss*, but *also-at least in part-with the emotional and psychological toll* .... Because Congress meant for the automatic stay to protect more than financial interests, it makes sense to conclude that harm done to those non-financial interests by a violation are cognizable as *'actual damages.'* ...

22

"thus *loss is broader than merely financial losses.*" (Id. at p. 1148.)

Thus, the Ninth Circuit and Congress, understand the difference between the all inclusive meaning of loss, and, the narrower subset of "financial loss".

Kehoe v. Fidelity Federal Bank & Trust, 421 F.3d 1209, 1213 (11th Cir. 2005) notes that actual damages, that is actual loss, includes injury.

> " 'Actual damages ... amount awarded to a complainant in compensation for his actual and real loss *or injury*." ...

Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir.1995)

> " ...'actual damages' has been interpreted to include recovery for emotional distress and humiliation. ... " (Accord Casella v. Equifax Credit Information Services, 56 F.3d 469, 474 (2d Cir.1995).)

McMillian v. F.D.I.C., 81 F.3d 1041, 1055 (11th Cir. 1996) wrote:

> "'Actual damages,' roughly synonymous with compensatory damages ..., 'real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed ... to "nominal' damages [and] 'punitive'damages. ... "

In re George E. Dawson, 367 F.3d 1174 (9th Cir. 2004), in dicta, claims it believes Mackie v. Rieser, 296 F.3d 909, 917 (9th Cir.2002) held actual damages can only be financial losses.  As Dawson does not concern  copyright, it is dicta.[19]

However, if one reads Mackie, it is clear it did not hold actual damages are limited to financial damages. Mackie  merely held damages for hurt feelings cannot be awarded.  Damages for hurt feeling can never be awarded and are not recognized compensable damages.  Plaintiff, on the other hand, seeks damages for pain and suffering and emotional distress, recognized as appropriate actual damages. Mackie

---

[19]  United States v. Johnson, 256 F.3d 895, 920  (9th Cir. 2001) (en banc) held when a court's pronouncement is unnecessary to the decision, it is dicta.  It also holds it is  defined, "as 'a statement [that] is made casually and without analysis, . . . uttered in passing without due consideration of the alternatives, or . . . merely a prelude to another legal issue that commands" the court's full attention) ... " (Id at p. 914-95.) Dawson's analysis of Mackie qualifies as dicta under both definitions.

never analyzed whether actual damages can include damages for pain and suffering or emotional distress.  Cases which discuss actual damages as financial loss have not had, presented to them, the issue of whether pain and suffering or emotional distress would  constitute actual damages, within 17 U.S.C. 504. (e.g. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512 (9th Cir.1985).)[20]

## IV.  ATTORNEYS FEES ARE NOT WARRANTED.

Defendant claims th the copyright action is frivolous because plaintiff's writing cannot be copyrighted; and plaintiff has suffered no damages.  That notion is dispelled (1) by the fact the Copyright Office issued a registration of copyright in plaintiff's writing, that establishes, as a matter of law, that plaintiff's writing is prima facia, copyrightable, (2) plaintiff has the remedy of injunctive relief, even assuming arguendo he has no damages, and (3) plaintiff has suffered damages. Defendant discusses alleged frivolous, without giving a definition.[21]

Defendant mischaracterizes plaintiffs writing as an ordinary phrase, fact or idea.  As shown, the Copyright Office does not issue registrations for ordinary facts, phrases or ideas.  It would not have registered plaintiff's writing if it was such.

Also, made up by defendant, is its claims that plaintiff tried to conceal his writing, to avoid a summary judgment motion. (See DKS paras. 21-30.)

Plaintiff claims the action is frivolous because there is no case law indicating a sentence in an email cannot be copyrightable.  First, plaintiff has show, as referenced above, (1) a sentence and a question are copyrightable, and, (2) the medium in which it is written is does not show whether or not a writing is

---

[20]  Assuming arguendo  the Ninth Circuit has held actual damages only relate to financial damages, plaintiff asserts the Ninth Circuit is incorrect and hereby preserves the issue to raise in the Ninth Circuit, to have said Court reconsider such ruling, or have said issue determined by the Supreme Court of the United States.

[21]  Neitzke et al. V. Williams, 490 U.S. 319, 325 (1989) writes something is frivolous where it "lacks an arguable basis either in law or in fact."  That is clearly not the situation with plaintiff's claim herein.

copyrightable.  Second, if there was no law, one way or another, that would give plaintiff the right to argue the law should be extended, in accord with his position.

Defendant claims that because other claims were dismissed, the copyright action is frivolous.  One has nothing to do with the other.  Further, the critical issue upon which plaintiff's other federal claims were dismissed is now pending in the Ninth Circuit.[22]  Plaintiff's Petition for Writ, in that Court, which has been served on this Court, and other writings filed by plaintiff, in this Court, shows that plaintiff's position is supported by the United States Government and case law.

There is  nothing nefarious about an attorney protecting against other attorneys from copying and distributing plaintiff's work product and giving such to the adverse party to whom such relates.  Plaintiff made efforts to resolve the matter, at the commencement of litigation and has included attempts to settle for $1.00 if defendant would merely admit his wrongdoing. (DKS paras 19-20 , Exh. 3-4.)

**V.  CONCLUSION.**

R. Weinstein has failed to rebut: (1) the writing was plaintiff's  original writing; (2) the writing had some minimal creativity; (3) the writing was an expression of ideas not the ideas themselves; (4) a sentence is copyrightable; (5) a question is copyrightable; or (6) thin protection doctrine provides plaintiff's righting protection from virtually identical copying.  As such, defendant has failed to rebut the presumption that plaintiff's writing is copyrightable and subject to copyright protection.  Defendant also has failed to show plaintiff has no potential remedy.

DATED: October 29, 2009          Respectfully submitted,

                                          S
                             KENNETH M. STERN, PLAINTIFF PRO SE

---

[22]   The issue is briefed in U.S. v. Pellicano, 08-50570,Turner, 09-50125 and Arneson, 09-50115, all convicted based upon plaintiff's theory of 18 U.S.C. 1030.  The issue is also brief In U.S. v. Nosal, 10-10038 wherein the United States Attorney General, United States Solicitor General and United States Atttorney for the Northern District of California all agree with plaintiff's interpretation of 18 U.S.C. 1030.