KENNETH M. STERN
5850 Canoga Avenue, Fourth Floor
Woodland Hills, Ca. 91367
(818) 716-1101

Attorney for Plaintiff, In Propria Persona

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH M. STERN, | NO.  CV09 1986 DMG (PLAX) |
| Plaintiff, | OPPOSITION TO MOTION FOR ATTORNEY'S FEES |
| v. | Judge Dolly M. Gee. |
| ROBERT WEINSTEIN, SARA ANN WEINSTEIN,WHITE, ZUCKERMAN, WARSAVSKY, LUNA, WOLF & HUNT LLP , VENITA MCMORRIS, BARBARA LUNA AND   DOES 2-4, 9-10, | Mag. Judge Paul Abrams |
| | Date: April 11, 2011 |
| | Time: 9:30 a.m. |
| | Crtrm: 7 |
| Defendants. | 312 N. Spring Street |
| | Los Angeles, Ca. 90012 |

COMES NOW plaintiff in opposition to Robert Weinstein's Motion for Attorney's fees.  Request is made for oral argument.  The opposition is based upon the grounds stated herein.

DATED: March 21, 2011          Respectfully submitted,
                                                     /S
                                      KENNETH M. STERN, PLAINTIFF
                                      PRO SE

1

# TABLE OF CONTENTS

I.  AS DEFENDANT FAILED TO MEET THE                                        1
MANDATORY REQUIREMENT, OF MEETING AND CONFERRING,
PRIOR TO BRINGING ITS MOTION, HE IS PRECLUDING FROM
HAVING THE MOTION GRANTED.

II. AS DEFENDANTS BILL CONTAINS FRAUDULENT                                 3
BILLINGS, INCLUDING BILLING UNRELATED TO THE COPYRIGHT
CLAIM, IT SHOULD BE REJECTED, IN ITS ENTIRETY.

III.  AS A MATTER OF LAW, THE COPYRIGHT CLAIM                              5
CANNOT BE FRIVOLOUS OR BROUGHT IN BAD FAITH.

IV.  THE COURT'S PREVIOUS COMMENTS                                         12
REGARDING ITS UNWARRANTED CLAIM PLAINTIFF'S PURSUIT
OF THE COPYRIGHT CLAIM IS FRIVOLOUS AND IN BAD FAITH
IS NOT BINDING, IS DICTA AND IS OUTRIGHT WRONG.

V.  ANALYSIS OF FACTORS IN DETERMINING                                    20
WHETHER ATTORNEYS FEES SHOULD BE AWARDED.

i

1

## TABLE OF AUTHORITIES

2  17 U.S.C. 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3  18 U.S.C. 107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4  28 U.S.C. 1498  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5  F.R.C.P. Local Rule 54-12  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

6  F.R.C.P. Local Rule 7-3  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

7  F.R.C.P. Local Rule 7-4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8  F.R.C.P. Rule 83  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9  F.R.C.P.Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

10

11  Barnes v. Logan, 122 F.3d 820 (9th Cir.  1997)  . . . . . . . . . . . . . . . . . . . . . . . . . 17

12  Caldwell v. District of Columbia, 201 F.Supp.2d 27 (D.D.C. 2001) . . . . . . . . . . 16

13  Crowley Marine Services Inc. v. Maritrans Inc., 530 F.3d 1169 (9th Cir. 2008)  . 4

14  Ehm v. Amtrak Bd. of Directors, 780 F.2d 516 (5th Cir.  1986) . . . . . . . . . . . . . 17

15  Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000) . . . . . . . . . . . . . . 7

16  Harper Row, Publishers Inc v. Nation Enterprises, 471 U.S. 539 (1985)  . . . . . . 12

17  Jackson v. Axton, 25 F.3d 884 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18  Jasinski v. Showboat Operating Co., 644 F.2d 1277 (9th Cir. 1981) . . . . . . . . . . 2

19  Khan v. Gallitano, 180 F.3d 829 (7th Cir 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . 18

20  Neitzke et al. V. Williams, 490 U.S. 319 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . 22

21  Stroh Container Co. v. Delphi Industries, Inc., 783 F.2d 743 (8th Cir. 1986)  . . . 17

22  Taylor AG Industries v. Pure-Gro, 54 F.3d 555 (9th Cir.  1995) . . . . . . . . . . . . . 17

23  United States v. City of Twin Falls, 806 F.2d 862 (9th Cir. 1986)  . . . . . . . . . . . . 3

24  White v. National Football League, 585 F.3d 1129 (8th Cir. 2009)  . . . . . . . . . . 10

25

26

27

28

**I.   AS DEFENDANT FAILED TO MEET THE MANDATORY REQUIREMENT, OF MEETING AND CONFERRING, PRIOR TO BRINGING ITS MOTION, HE IS PRECLUDING FROM HAVING THE MOTION GRANTED.**

Local court rules mandates, through the word "shall" that a party seeking attorneys fees is required to do a meet and confer, prior to bringing an attorney's fees motion.   Since the word "shall" makes such a meet and confer mandatory, without such, defendant is, as a matter of law, precluded from being awarded attorney's fees.[1]

F.R.C.P. Local Rule 54-12, states:

"L.R. 54-12 Filing Date for Attorneys' Fees. Any motion or application for attorneys' fees ... Such motions and their disposition **shall** be governed by L.R. 7-3, et seq.

F.R.C.P. Local Rule 7-3 provides:

"L.R. 7-3 Conference of Counsel Prior to Filing of Motions.2 In all cases [inapplicable exceptions deleted] ... counsel contemplating the filing of any motion **shall** first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.   If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party **shall** include in the notice of motion a statement to the following effect:

---

[1]   This is but a continuing failure of defendant to abide by the Rules of Court. For example, defendant failed to timely serve a F.R.C.P.Rule 26 disclosure statement. The insurance information was not disclosed.  When this was brought to defendants attention, he agreed to provide such.   However, even though he agreed to do so, he eventually refused.  Furthermore, when plaintiff sought defendants cooperation in signing the necessary paperwork, for the early mediation, defendant failed and refused to sign such.  Plaintiff brought this to the Court's attention and plaintiff filed he necessary document without defendants signature.  Also, defendant failed to meet and confer, or even attempt to do so, regarding his summary judgment motion.

1

1  "This motion is made following the conference of counsel pursuant to

2  L.R. 7-3 which took place on (date)."[2]

3  Jasinski v. Showboat Operating Co., 644 F.2d 1277 (9th Cir. 1981) held that

4  a Court is required to follow local rules.

5  "It is undisputed that the court below failed to comply with District of

6  Nevada Local Rule 16(g), which requires oral argument on all motions

7  for summary judgment unless waived by all parties.[*fn3] It is also clear

8  that the district court violated F.R.C.P. 56 ... "

9  "Rules 56(c), 78 and 83, read together, authorize district courts to

10  provide by rule that a party desiring oral argument on a motion for

11  summary judgment must apply therefor, in the absence of which oral

12  argument will be deemed to have been waived.... But in view of the

13  language of Rule 56(c), and having in mind that the granting of such a

14  motion disposes of the action on the merits, with prejudice, a district

15  court may not, by rule or otherwise, preclude a party from requesting

16  oral argument, nor deny such a request when made by a party opposing

17  the motion unless the motion for summary judgment is denied."

18  After Jasinski was decided, United States v. City of Twin Falls, 806 F.2d 862

19  (9th Cir. 1986) held that when a rule of court uses the word, shall, it is mandatory

20  that the Rule be followed, with the Court having no discretion to disregard the rule.

21  "Fed. R. Civ. P. 54(d) provides that 'except when express provision

22  therefor is made . . . in a statute of the United States . . ., costs shall be

23  allowed as of course to the prevailing party unless the court otherwise

24  directs . . . ."

25  " ... the Supreme Court recognized that Rule 54 authorizes district

26

27  _____

28  [2] No such notice appears in defendant's Motion; as, he never even attempted
to do a meet and confer.

1

courts to exercise their discretion 'sparingly ..."

"We do not read that Rule [54(d)] as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny. . . . Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute.

"The exercise of that discretion may not be unlimited, however. We note [there is) . . . language suggesting that these elements of cost may only go beyond the statutory 'limits (subsistence and transportation) in the presence of special circumstances. ... "

Regarding another issue involving a rule which uses the word "shall" in conjunction with an exception to the circumstances pursuant to which the word "shall" applies, <u>Twin Falls</u> wrote:

"Fed. R. Civ. P. 26(b)(4) authorizes the deposition of experts, and subdivision 26(b)(4)(C) specifically provides:

Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery . . . .

" ... The **language of the rule is mandatory ("shall")**, *unless* manifest injustice would result. ... " (emphasis added.)

Thus, <u>Twin Falls</u> makes it clear that use of the word "shall" limits a Court's discretion to dispense with a rule, unless; the rules specifically provides for an exception, by which he Court may exercise its discretion, to the rule.  That is not the situation herein.

<u>Crowley Marine Services Inc.</u> v. <u>Maritrans Inc.</u>, 530 F.3d 1169 (9th Cir. 2008) wrote:

2

1   " Like the other rules of the COLREGS[3] that employ the word "shall,"

2   Rule 17(b) is mandatory. ... This interpretation of the word "shall" is

3   consistent with our earlier opinion in Crowley I , that the Allegiance, as

4   the overtaking vessel, despite the coordinated nature of the tug escort,

5   was required to abide by the compulsory COLREGS Rules 8(e) and

6   13(a), which also use the term "shall." See Crowley I, 447 F.3d at

7   724-27. We conclude that Rule 17(b) is a mandatory COLREGS rule."

8   Furthermore, there is nothing in either said local Rule 54-12 or Rule 7-3 which

9   gives the Court the discretion to dispense with the meet and confer.  This is shown

10   by Local Rule 7, which in other instances, does give the Court the discretion to

11   dispense with the Rules requirements.  F.R.C.P. Local Rule 7-4 states:

12   "L.R. 7-4 Motion Papers. The Court may decline to consider a motion

13   unless it meets the requirements of L.R. 7-4 through 7-8. "

14   No such discretion is given as to Rule 7-3.  Such shows an intent that the Court not

15   have discretion to dispense with such rule.

16   Thus, the Court is not authorized to grant an exception to the mandatory meet

17   and confer.  The defendant's failure to arrange, and participate in, such, precludes the

18   grant of the motion.

19   **II.  AS  DEFENDANTS  BILL  CONTAINS  FRAUDULENT  BILLINGS,**

20   **INCLUDING BILLING UNRELATED TO THE COPYRIGHT CLAIM, IT**

21   **SHOULD BE REJECTED, IN ITS ENTIRETY.**

22   Defendant's bill is a fraudulent document.  There are various areas of provable

23   fraud and/or billings which do not apply to the copyright claim, this Court's

24   proceedings, or even billings which do no relate, to this case, whatsoever.  As such,

25

26   ³  COLREGS are federal statutes passed by Congress.  See <u>Crowley</u>, fn. 1.

27   Federal Rules of Civil Procedure were passed by Congress.  So too, it is through Congressional provision that local rules to the F.R.C.P. are adopted.  See F.R.C.P.

28   Rule 83.

the bill, should be rejected, in its entirety, as not being credible; although, plaintiff

might not be able to show each and every entry which is improper..

What should be most obvious, to the Court, is defendant's billing for two court

hearings, each of which lasted only a few minutes, over an hour each.  Similarly,

defendant billed over three hours, for the status conference meet and confer, which

lasted, at most, a half an hour.  Another category of fraudulent billing is defendant's

billing regarding plaintiff's motion for reconsideration.  That motion only related to

reinstating plaintiff's non copyright claims, that had been dismissed and amending

to add two new counts.  The third area of fraudulent billing regards entry for matters

that clearly do not apply, to this case; but, are in regard to some other cases being

handled by defendant's counsel.  These are billings related to the speed of a vehicle

and relating to a batting helmet.  The next area of fraudulent billing is defendants

claim regarding preparation of meet and confer documents regarding the summary

judgment motion.  As reflected in the Court's records, and plaintiff's meet and confer

statement, defendant never attempted a meet and confer, much less filing meet and

confer documents, defendant never attempted a meet and confer.

Defendant seeks to have plaintiff pay for defense counsel' purported work related to

plaintiff, having sought, a Petition for Writ of Mandate, in the Ninth Circuit. There

are a few reasons why such is not appropriate.  First, that Petition did not related to

the copyright claims.  It related to the non copyright federal claims dismissed by

defendant, not to the copyright claim.[4]  Second, that work was not even in this Court.

Also, there are some entries where defendant inappropriate seeks to have plaintiff pay

for defense counsel learning federal civil procedure.  Plaintiff should not have to pay

for defense counsel to learn the basics of how to practice law in federal Court.

Because of these inappropriate and fraudulent billings, which can be proved,

---

[4] Defendant's billing shows a separate billing, from the substantive part of the
Writ, regarding the continuance aspect.

4

this Court should reject the billing, as a whole.  Plaintiff cannot necessarily prove whether other entries are fraudulent, in terms of whehter the work was done, or whether as much time was really spent as claimed, because it is clear that there are several fraudulent items in the billing, the entire bill should be disregarded.

**III.  AS A MATTER OF LAW, THE COPYRIGHT CLAIM CANNOT BE FRIVOLOUS OR BROUGHT IN BAD FAITH.**

A   Because the Copyright Office registered plaintiff's writing, there is a presumption of copyrightable.  Registration shows plaintiff's writing is not a mere phrase; as, pursuant to the C.F.R, which guides the Copyright Office, the Copyright Office would not have registered plaintiff's copyright, if it was a mere phrase.

Plaintiff's writing is registered the by Copyright Office, which creates a presumption the writing is copyrighted.  Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000)("Ets-Hokin I") writes:

" ... certificate of registration from the U.S. Copyright Office entitled him to a 'rebuttable presumption of originality' ...

" ... registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding ...

(Id. at p. 1075)

Because the Copyright Office believed that plaintiff's writing was copyrightable, and thereby issued a registration of copyright, plaintiff cannot be said to have acted frivolously, or in bad faith, in asserting his claim was copyrightable.[5]

B.   As plaintiff had a reasonable belief that a copyright violation existed, if, assuming such violation occurred, if plaintiff had any potential remedy, the action

---

[5] Even assuming, arguendo, the Court was right in determining the writing was not copyrightable, plaintiff provided an extensive and detailed analysis, based upon precedent, which, although the Court disagreed was incorrect, was arguably meritorious.  Even defendant admits, in his motion, this was a novel and complex issue.

5

1   could not have been frivolous or in bad faith..

2          Defendant complains plaintiff cannot prevail in a copyright action because he

3   has no damages.  Even were that true, which it is not, such is irrelevant.  Plaintiff has

4   a right to seek injunctive relief.  Defendant is simply wrong that, assuming plaintiff

5   prevailed in showing copyright violation, he would not have a potential remedy of

6   injunctive relief. Further, it is wrong for defendant to claim that any such assertion,

7   by plaintiff, would be frivolous.

8          In fact Judge Gee, herself, has signed an order, restraining future copyright

9   violations, including preclusion of certain access to the internet, in a situation where

10  the copyright violation occurred from the copying of information, from an internet

11  website

12  17 U.S.C. 502 provides:

13          "(a) Any court having jurisdiction of a civil action arising under this title

14          may, subject to the provisions of section 1498 of title 28[6], grant

15          temporary and final injunctions on such terms as it may deem reasonable

16          to prevent or restrain infringement of a copyright."

17          Once plaintiff established it was not frivolous for him to contend there was a

18  copyright violation, even it if turned out plaintiff was wrong, then, it could not be

19  frivolous for him to contend he had a potential injunctive remedy.[7]  This is

20  particularly so in light of the following, which is that which Judge Gee approved, just

21  ten days before the hearing on defendant's summary judgment motion.

22          "Stars Mentoring, A California Corporation D/B/A Compsolution v. Do

23  _____

24          [6] 28 U.S.C. 1498, applying to infringement by the government, is inapplicable.

25          [7] Obtaining injunctive relief from any future thefts, by Robert Weinstein, who

26  as of at least a week ago, was still a member of the CAALA listserve, of plaintiff's

27  work product was the primary motivation in pursuing the copyright claim.  Any claim
    to monetary damages, if any, was wholly collateral and secondary to obtaining

28  injunctive relief.

6

1   Ki Kim, An Individual; Dong Ryel Ryu, An Individual; Kyu Seung, No.

2   : CV08-02826 DMG (C.D.Cal. 01/18/2011)

3    "The opinion of the court was delivered by: Honorable Dolly M. Gee

4   United States District Judge

5    "Defendants, as well as their agents, servants, employees, attorneys,

6   successors and assigns, and all those persons in active concert or

7   participation with them hereby are permanently enjoined from engaging

8   in, committing, or performing, directly or indirectly, all of the following

9   acts:

10   "Accessing in any manner 3 STARS copyrighted material and website

11   known as FashionGo.net," thereby enjoining any potential future

12   copyright violations."

13   So, by Judge Gee's own order, in the above case, plaintiff's position that he had a

14   potential right to an injunction, cannot be frivolous.[8]  This is the end all and be all of

15   any question as to whether plaintiff's pursuing the claim.

16       C. Fair Use.

17       While the Court did not reference the fair use doctrine in the attorney's fees

18   portion of its order on the Summary Judgment/Attorney's fees motion, since

19   defendant merely makes a generalized reference to reliance on the order, fair use

20   needs to be addressed, herein.

21       While the Court recognized that fair use is a mixed question of fact and law,

22   which would require that fair use be presented to the jury if any reasonable juror

23   could determine fair use did not exist, (S.J. Order p. 4 ls. 1 p. 5 ls 1-3) The Court sat

24

25       [8]  Robert Weinstein is still a member, and subject to being a member, of the

26   CAALA listserve.   As such, he continues to present a danger of violating plaintiff's

27   copyrights in his postings, to the listserve.  As such, regardless of whether plaintiff

    has any damages, he has the remedy of injunctive relief.

28

7

as a trier of fact, in deciding fair use against plaintiff, instead of merely determining

if triable issues of fact exist.[9]  A reasonable trier of fact could find there was no fair

use.  In fact, to say that there was fair use, when defendant stole, then wrongfully

distributed, plaintiff's writing, in contravention of plaintiff's work product and

confidentiality rights, is an oxymoron.  It also needs to be noted there were two issues

presented by plaintiff, which indicated that, as a matter of law, which the Court failed

to even address, in its Order finding against plaintiff on the fair use issue.

Plaintiff asserted there were two reasons why, as a matter of law, there could

be no fair use.  One issue that, for there to be fair use, the use must be obtained from

---

[9]  The Court, not defendants, raised the fair use defense issue.  Defendants did
not raise fair use, an affirmative defense, in their summary judgment motions.
Defendants, as indicated in the final trial documents, filed with the Court, waived the
fair use defense.   They did not ask for any jury instructions on the issue, nor
otherwise reference a request for anything related to the issue.  The closest either
defendant came was one made  a broad reference to affirmative defenses.  However,
without specific information being related to fair use, there would be no way to raise
the issue.  This was brought up, but not considered by the Court.  The fair use issue
was not even properly before the Court.  It is true, that pursuant to F.R.C.P. Rule 56
(f) , a Court, under proper circumstances, may raise an issue on summary judgment.
However it seems, this would only be proper when it is required to dispose of a
matter, not to raise an affirmative defense, on a parties behalf, which would not be
dispositive, particularly as it is the party's responsibility to raise an affirmative
defense, which may be waived, if at all.   However, herein, the Court, in raising the
fair use issue, in the summary judgment motions, an issue which could (and was)
waived, by defendants, in terms of summary judgment, was certainly not an issue
*necessary* for the Court to determine, to decide the summary judgment issue.  This is
particularly true in light of the Court [erroneously] deciding that plaintiff's writing
was not copyrightable.  At that instance, the fair use doctrine determination became
moot, dicta and superfluous.  Thus, the Court stepped out of its role as a Court and
stepped into the role of advocate and defense counsel.  A Court may not take on the
role of both judge and litigator for one side. (White v. National Football League, 585
F.3d 1129 (8th Cir. 2009).)  As will be later explained, herein, the was not the first,
but at minimum, the Court took on the role of defense counsel

an authorized copy.  There was no such copy, herein, as the copy was stolen, was plaintiff's work product, and, was protected by a confidentiality agreement, signed by defendant.  The second issue is that for a fair use defense, the defendant must admit the use.  Defendant denied the use.  Thus, as a matter of law, fair use could not be a defense.

Furthermore, a jury, upon analyziging the matters to be considred, could have found there was no fair use.

A.  <u>Purpose and character, Commercial versus non commercial use.</u>

Plaintiff asserted that the good will obtained by defendant's business, from White, Zuckerman's business, in disclosing plaintiff's work product, made the use commercial rather than non commercial use.  The Court erroneously determined that there was no evidence of such.  Plaintiff submitted evidence that both defendants were clients of White, Zuckerman.  This certainly is evidence from which a jury could find that defendants purpose was to garner good will, and perhaps discounts, from White, Zuckerman.

Furthermore, this raises the problem of claiming fair use, while  denying use.  Without such admission, in can only be inferred the intent in the use by defendants.  Because defendant denied use, defendant cannot put forth evidence upon the purpose of the use.  The Court also found that good will could not be a commercial use.  This is incorrect. A jury certainly could have found this attempt at obtaining White, Zuckerman's good will existed.  However, the Court, rather than merely determining if there was an issue of fact, sat as the trier of fact, deciding the issue against plaintiff.

A reasonable juror could also find, in terms of purpose and character, that the writing, being work product and, and subject to a confidentiality agreement, signed by defendant, would not be subject to fair use, when, as herein, the writing was stolen and distributed, in violation of the work product and confidentiality protection. While it is true, the use was "transformative" that is only one sub factor to be used under this factor.   And, it is by no means conclusive, nor does it preclude a juror from

9

determining the character and use does not provide for fair use.  This was error for the Court to sit as the trier of fact, on this category.

B. <u>Nature of the copyrighted work.</u>

The Court merely stated that because the work was merely a one sentence, information writing, the nature militated towards fair use.  However, the Court ignores other aspects of the nature of the work.  The Court ignores that nature was it was plaintiff's attorney work product. It ignores the nature was that it was a writing that was submitted only to those who had signed a confidentiality agreement, including defendant, agreeing that the writing, thereto, would remain confidential within those signing the agreement.  The Court ignored the fact that the character of the work was that the work was a confifential consultation, with other attorney experts, to aid plaintiff in the representation of a client vis a vis protecting the client against White, Zuckerman's dishonest billing practices.  These are all facts from which a reasonable juror could find this category of analysis pointed away from fair use.  However, the Court, rather than merely determining whether there was a triable issue of fact, erreonsly, made itself the trier of fact.

C. <u>Amount of work copied.</u>

The Court recognizes that the entirety of the work was copies.  A reasonable jury could have found this pointed away from fair use.

D. <u>Effect of value of copyright</u>.

18 U.S.C. 107 (4) provides, concerning the value of the copyright, in determining whether copyright violation exists, "(4) the effect of the use upon the potential market for **_or_ value of the copyrighted work.**" (Emphasis added.)  The Court only considered the potential market prong of this category of analysis.  The Court failed to address the "or value of the copyright work." aspect.  This is another reflection the Court sitting as the trier of fact, rather than, determining whether a triable issue of fact exists.

Plaintiff correctly asserted that value of the copyright does not just relate to its

monetary value regarding marketing of the work.  It also included non monetary value, to plaintiff, even if there is no market for the work and the work is not intended to be marketed.  Not all copyrighted works are created for the pursuit of the almighty dollar.    Not all copyrighted works are created for commercial profit.    The Court only referenced a part of this element, the potential marked for the work.  It ignored the non marketable aspect of the rule. Harper Row, Publishers Inc v. Nation Enterprises, 471 U.S. 539, 561 (1985)  noted:

> ""If the defendant's work adversely affects the value of *any* of the *rights* in the copyrighted work ... the use is not fair." 3 Nimmer § 13.05[B], at 13-77—13-78 (footnote omitted). (Id. at p. 568)(emphasis added)

The value of the copyrighted work is the value of an attorney sole practitioner, being able to help prepare the attorney's cases, and help the attorney represent client's, with a tool whereby the attorney is able to seek the advise of experts, to wit, other attorneys, who may be knowledgeable concerning issues that arise in the case(s) of the attorney seeking advise.  For persons to be able to steal an attorney's work product and distribute such to other's not entitled to such diminishes the value of an attorney's work product, and ability to rely upon the use of such.  It diminishes the value of the ability to consult with other attorneys.

As more specifically relates to the writing involved herein, there is value to plaintiff to be able to privately inquire into whether a business, with whom plaintiff does business, is engaging in misconduct towards plaintiff and/or his client, without that business knowing that the inquiry is being made.

A reasonable juror could determine that plaintiff's purpose militates against fair use.

### E.  Balancing.

The Court admits that some of the factors are neutral.  This is sufficient to require the fair use issue to go to the jury.  The Court also claims the other factors support the defense.  However, this does not mean that there ise not also counter

support for plaintiff's position, in analyzing the involved factors, that there is no fair
use.   As noted, the Court ignored the fact that a reasonable juror could find, on the
various elements analyzed, find for plaintiff that the factor did not support fair use.

The Court, writes of of heavy handed conduct, [10]and using a canon to kill a fly
instead of a fly swatter, even dangerous, if every quote from an email, blog, listserv
or other cyberspace writing could be subject to copyright protection, without the
protection of fair use.  Plaintiff has never asserted that no such use could ever be fair
use.

Plaintiff merely asserts, as to the situation herein, where a lawyer steals another
lawyers attorney work product, particularly, as herein, where the purpose of the use
was to wrongfully aid the adverse subject of the listserve,  from a confidential
listserve created for the purpose of attorneys helping other attorneys with advise on
their cases.

Every Court should be highly concerned about an attorney stealing another
attorney's  work product, particularly from a confidential listserve to which the thief
has pledged to maintain the confidentiality,  and, giving the writing to the adverse
subject of the writing.  Every Court should be concerned how such could possibly be
considered a fair use, and, should not be concerned as to whether fair use would
conjecturally apply to situations not presented in this case.

**IV.   THE COURT'S PREVIOUS COMMENTS REGARDING ITS
UNWARRANTED CLAIM PLAINTIFF'S PURSUIT OF THE COPYRIGHT
CLAIM IS FRIVOLOUS AND IN BAD FAITH IS NOT BINDING, IS DICTA
AND IS OUTRIGHT WRONG.**

The Court, in dicta, made some comments, including erroneous discussion of

_____

[10]  It should be noted that in Judge King's order denying the Motion to Dismiss
the Copyright claim, Judge King specifically ruled that copying from an email can be
a copyright violation.  Plaintiff has also further set forth law indicating the medium
in which the work is put into tangible form, does not control whether or not the
writing is subject to copyright protection.

bad faith and frivolousness, regarding attorneys fees.  This dicta is not binding, in this motion.  In fact, most of the comments addressed matters that were never raised in defendant(s) briefs, and which, plaintiff never had an opportunity to address in any brief.[11]

A.  <u>Damages was never a proper summary judgment issue.</u>

Assuming, arguendo, plaintiff was able to defeat defendant on the issue of copyrightability of his writing, a lack of damages would not have entitled defendant to summary judgment.  Defendant's raising the damages issue was simply a red herring, and not a real issue, raised by defendant.  Plaintiff need not show damages to prevail on thee copyright claim.  He had the potential remedy of an injunction, which was not negated by defendant, or this Court, had plaintiff prevailed on his copyright claim.  This  is reflected in Judge Gee's order in Ki Kim, An Individual; Dong Ryel Ryu, An Individual; Kyu Seung, No. : CV08-02826 DMG (C.D.Cal. 01/18/2011)   Plaintiff brought the right to a injunction out, it his opposition to the summary judgment motion.[12]  The Court and defendant claim that there is nothing to show that defendant could violate plaintiff's copyrights, in the future. However, defendant remains a member of the listserv. Defendant and the Court's argument is belied by Judge Gee's order in Kim v. Ryu.

B.  <u>The Court's incorrect  assertion that plaintiff could not have suffered</u>

---

[11]  Plaintiff arrived an hour before the hearing on the summary judgment and requested a copy of the tentative ruling, so that he could thoroughly read and analyze such.  Plaintiff was told, by the Court Clerk, there was no tentative ruling.  Plaintiff left and came back to the Court.  He was given, about five minutes before the hearing, the approximate 30 page tentative ruling.  Before the start of the hearing, five minutes later, plaintiff barely was able to quickly skim read the tentative ruling.  To properly sit down and analyze such would have taken about an hour. As such, plaintiff was never given a realistic opportunity to address the newly raised matters, in the tentative ruling, which were then included in the actual ruling.

[12]  Because this was a red herring, non issue, it would be improper to award defendant attorney's fees on this issue, as the fees were not reasonably incurred.

13

aggravation of his severe arthritis from the stress related to defendant's conduct.

Plaintiff, in regard to defendant's assertion plaintiff suffered no damages, indicated that as a result of the stress of defendant's conduct, he suffered an aggravation of the severe arthritis in his hip.  Plaintiff stated this, under penalty of perjury, in his declaration in opposition to defendant's Summary Judgment. Assuming arguendo such were compensable damages, in a copyright action, plaintiff's declaration was sufficient to create a triable issue of fact, as to whether he did so suffer such damages.  He was not required, for summary judgment purposes, to present all of the evidence he had, regarding such damages.

The Court, using the pejorative comment, directed at plaintiff, a disabled person, that it was preposterous for plaintiff to claim that his arthritis was aggravated by the stress of that which was done to him by defendant.  The Court made that up. The Court has never seen plaintiff's medical records.  The Court has never been present when this was occurring.  The Court relied upon no expert opinion that such could not be the case. The Court simply made such up.  It is outrageous for defendant to now rely upon the Court's speculative comment.

In fact, it is well documented that stress can aggravate osteoarthritis.  There are many articles documenting such.  Plaintiff has provided a few (See Exhibit  2.) Furthermore,(Caldwell v. District of Columbia, 201 F.Supp.2d 27 (D.D.C. 2001) held, in another federal context, aggravation of an arthritic condition is physical injury.

Defendant, in attempting to adopt the Court's statement, repeats this unwarranted affront upon plaintiff, a disabled person.  Not only is defendant's conduct, in attempting to rely upon this Court's comment, an affront upon plaintiff, it is an affront upon every disabled persons, in the United States, and in particular those, who  have ever been insulted, harassed, discriminated against, belittled and humiliated, because of their disability.

C. As no court has determined, and only one court has in incorrect dicta, ever

14

1  addressed the issue of whether physical injury, including aggravation of osteo
2  arthritis , can be damages, in a copyright action, plaintiff's asserting such cannot be
3  frivolous or in bad faith.

4      As indicated, plaintiff should never had to address, in summary judgment, an
5  issue of damages; as, even if he was not damages, he still had the potential remedy
6  of injunctive relief.  However, by asserting plaintiff had suffered no damages, he was
7  required to assert any potential damages, even if to preserve any such issues for
8  appeal.

9      If the Supreme Court has not rejected a position set forth, the position cannot
10 be found to be frivolous.

11 If there are prior rulings against a party, which is similar to, but not the same issue
12 previously decided, the position taken is not frivolous.   Where the law on a subject
13 has not been decided, it is not frivolous to assert a  position, on the issue. Barnes v.
14 Logan, 122 F.3d 820, 825 (9th Cir.  1997) wrote:

15      "this appeal does not appear to be frivolous or wholly without merit. The
16      Minnesota law of punitive damages was not "clarified" until the
17      pendency of this appeal. "

18      Where the Ninth Circuit has not ruled on a subject, it is not frivlous,to assert
19 the position, within the 9th Circuit. Taylor AG Industries v. Pure-Gro, 54 F.3d 555,
20 563 (9th Cir.  1995) wrote:

21      " It is true that in this case, the law has been clearly established not only
22      by the Supreme Court but seven other courts of appeal. However, this
23      circuit has never spoken on this issue, and Appellants' argument cannot
24      be characterized as "wholly without merit."

25      Ehm v. Amtrak Bd. of Directors, 780 F.2d 516, 518 (5th Cir.  1986), wrote:
26      "Amtrak seeks sanctions against Ehm for bringing a frivolous appeal,
27      pointing to warnings given Ehm by the District of Columbia Circuit. We
28      reject the demand as inappropriate in the present case. The issue

presented by his appeal, i.e., the propriety of a dismissal for failure to post a costs bond, involves a novel procedural issue on which there has been no prior Fifth Circuit decision. In the absence of such a decision, it cannot be said that Ehm's "legal contentions lack[ed] any arguable merit, and are long-settled against him."frivolous appeal. We conclude that in the absence of prior authority from this circuit, Vantare's arguments regarding the on-board bill of lading are not so lacking in merit as to justify sanctions"

If an issue is one of first impression, it is not frivolous to assert a position on the issue.   If the issue is novel, it is not frivolous.  <u>Stroh Container Co.</u> v. <u>Delphi Industries, Inc.</u>, 783 F.2d 743, 753 (8th Cir. 1986) wrote:

"We do not go so far, however, to conclude that Schlitz' appeal was so frivolous as to support an award of attorney fees to Geocaris under Fed.R.App.P. 38. Such awards may be granted in the court's discretion "in the case of a frivolous appeal as a matter of justice to the appellee and as a penalty against the appellant." Fed.R.App.P. 38 advisory committee note. In this case, we are mindful of the fact that the merits of the jurisdictional and substantive questions raised here were not and are not entirely settled. Thus, we cannot conclude that this appeal was frivolously brought.

<u>Khan</u> v. <u>Gallitano</u>, 180 F.3d 829, 837 (7th Cir 1999) wrote:

"As they did in the court below, the defendants focus on the supposed frivolity of Khan's substantive-due-process claim rather than her Contracts Clause claim. The defendants argue that the district court misapprehended the well established law of this circuit when it concluded that Khan had made a good faith argument for an extension of existing law. The defendants argue that our prior decisions, particularly Wroblewski v. City of Washburn, 965 F.2d 452 (7th Cir.1992), are sufficiently on

point that Khan's legal arguments in support of her claim are frivolous. We disagree.
Wroblewski did involve somewhat analogous facts, but they were not identical. In
that case, the plaintiff claimed that certain state actors prevented him from getting a
job at a marina that had been owned by the municipality but was being sold to a
private entity. He argued that this violated his substantive-due-process rights because
the defendants had deprived him of the fundamental liberty to engage in an
occupation of his choice. We rejected that argument because the plaintiff was not
prevented from engaging in his chosen occupation, merely prevented from getting a
particular job. The defendants argue that by analogy this reasoning should apply to
this case. This is a good argument for affirming, but not a compelling one for
attorney's fees. Wroblewski and the other cases the defendants rely on do not dictate
the result we reach today. There is a significant difference between making a weak
argument with little chance of success--what Khan did--and making a frivolous
argument with no chance of success. As the courts have interpreted § 1988, it is only
the latter that permits defendants to recover attorney's fees. See Munson v.
Milwaukee Bd. of School Directors, 969 F.2d 266, 270 (7th Cir.1992) (affirming
award of fees to defendant where discovery produced only minimal support for
plaintiff's factual allegations). The district court was therefore well within its
discretion to deny fees here."

Plaintiff was forthright, with the Court, in informing the Court of the case
which theoretically could be construed against, plaintiff's position which incorrect
dicta, ostensibly held that personal injury damages could not be obtained in a
copyright action..  Plaintiff explained, in his opposition to defendant's summary
judgment motion, why it was dicta, and why it's dicta was wrong, in misinterpreting
another 9th Circuit case, which merely held that damages could not be obtained for

17

1   hurt feelings.  Plaintiff never claimed damages for hurt feelings.[13]

2       Plaintiff also, in a detailed logically reasoned analysis showed why the words

3   and terms, regarding he meaning of damages and loss would include personal injury

4   and emotional distress damages.

5       D.  Timing of giving plaintiff's writing to defendant.

6       The Court, at the scheduling conference, and again in its Summary

7   Judgment/Attorneys fees order, makes a claim that plaintiff, plaintiff should have

8   given the defendant plaintiff's writing earlier.  What the Court ignores, although such

9   has been pointed out to it, is (1) at the time of the scheduling conference, and not until

10  the day after plaintiff could first be considered to have been required to give such to

11  defendant, plaintiff was not under any obligation to give such to defendant.  The

12  Court cites no authority for its position that plaintiff was required to give defendant

13  the writing; although, plaintiff was under no legal compulsion to do so.  The fact that

14  defendant could have, earlier, sought discovery of the document, but failed to do so,

15  is not plaintiff's fault.

16      At the scheduling conference, (1) the Court had already ruled plaintiff was not

17  required to quote the writing, in his complaint, (2) Rule 26 did not require disclosure.

18  All that Rule 26 required was that plaintiff set forth the category of document, which

19  plaintiff did.  At the time, defendant, although he could have, had not served

20  discovery, upon plaintiff, to obtain the document.  In fact, this Court denied plaintiff's

21  request to give defendant the document, under a protective order, because, there was

22  no obligation, at that time, to give the document to defendant.  The Court ruled it

23

24      [13]  In plaintiff's opposition to the summary judgment motion, he also, stated,
25  under penalty of perjury, defendant's conduct in stealing and distributing plaintiff
    confidential attorney work product, and the problems causes by such, caused plaintiff
26  emotional distress, the result of which, included the symptom, at minimum, of
27  insomnia.  That is not the same as hurt feelings.  No one is ever entitled to recover
    damages for hurt feelings.  Plaintiffs are, under the right circumstances, entitled to
28  recover for emotional distress.

would issue a protective order, if at all, only when plaintiff was legally required to provide the document, to defendant, which had not yet occurred.

Furthermore, plaintiff offered the document to defendant, shortly after defendant was served with the summons, and complaint, in this case, provided defendant(s) agreed that it would  be given to them, pursuant to a protective order. (Exh. 8.)  The Court cites factors for a protective order, that does not include protecting one's attorney work product.  Nor does the Court's reference indicate that a trade secret could be protected.[14]  However, surely both could properly be subject to a protective order.  In fact, the two times the Magistrate Judge denied the protective order, without prejudice, such was upon procedural grounds.  The Magistrate Judge did not determine the Court was without authority to grant the type of protective order plaintiff was seeking.  Regardless of whether the Court is, or is not right, concerning whether such an order could be issued.  That is not the issue.  The issue is plaintiff's intent and belief, regarding whether such a protective order can be issued.  It is, and was, plaintiff's belief that such a protective order could be issued. It is now quite apparent, from defendant's billing, that the reason that they refused, was because defendant was  hoping to destroy plaintiff's work product privilege, by

---

[14]    Although plaintiff cannot find such, at the moment, plaintiff has read a protective order, in one of Judge Gee's cases, wherein the Magistrate Judge signed a protective order in a trade secret case.  Privileged work product is similar to a trade secret. It should also be noted that this Court, in its order regarding attorney's fees continues the factual falsehood that defendant upon which defendant has hood winked this Court.  That is the claim that plaintiff's writing was subject to rightful vies by 2,300 people. As plaintiff has previously explained, there is no evidence to support such claim.  As plaintiff has pointed out, that figure is the total membership of CAALA.  Not all members of CAALA are entitled to view the listserv messages, as, not all members have signed the confidentiality agreement.  No evidence has ever been presented as to the number of people entitled to view the listserv messages. Also, as previously documented, to the Court, the Wikileak information, for which a soldier is being prosecuted for leaking, was confidential information to which at least 500,000 had rightful authority to view.  So, the fact that modern technology allows plaintiff to consult with numerous attorney experts, in no way negatively impacts upon the work product privilege, or the privacy and confidentiality involved.

forcing plaintiff to reveal, and thereby waive the work product privilege.

Had defendant desired to have the document earlier, he could have, sought such through discovery, much sooner than he did.   In fact, defendant received and reviewed the document, the day after it first reviewed plaintiff's response to defendant's demand for its production.

The Court cited no authority, thus there is no authority for defendant to rely upon, regarding the Court's order, that refusing to provide a litigation document, when the document is not legally compelled to be produced, is frivolous or in bad faith.

In sum, the Court can not properly penalize plaintiff, or find he acted frivolously, or in bad faith, because he did not do something he was not legally obligated to do.

## V.   ANALYSIS OF FACTORS IN DETERMINING WHETHER ATTORNEYS FEES SHOULD BE AWARDED.

Defendant claims th the copyright action is frivolous because plaintiff's writing cannot be copyrighted; and plaintiff has suffered no damages.   That notion is dispelled (1) by the fact the Copyright Office issued a registration of copyright in plaintiff's writing, that establishes, as a matter of law, that plaintiff's writing is prima facia, copyrightable, (2) plaintiff has the remedy of injunctive relief, even assuming arguendo he has no damages.   Defendant discusses alleged frivolous, without giving a definition.   Nor does the Order, to which defendant refers set for legal standards for frivolous or bad faith.[15]

The general standards to use, in determining if attorney's fees should be awarded are:

"(1) the degree of success obtained; (2) frivolousness; (3) motivation;

(4) the objective unreasonableness of the losing party's factual and legal

---

[15]   Neitzke et al. V. Williams, 490 U.S. 319, 325 (1989) writes something is frivolous where it "lacks an arguable basis either in law or in fact."   That is clearly not the situation with plaintiff's claim herein.

arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." (<u>Jackson</u> v. <u>Axton</u>, 25 F.3d 884, 890 (9th Cir. 1994).).

1.  <u>Degree of success.</u>

Defendant was successful.

2.  <u>Frivolousness</u>

As previously explained, pursuit of the claim was not frivolous.

3.  <u>Motivation.</u>

Plaintiff's motivation was to attempt to enjoin and protect against defendant engaging in any further theft and wrongful distribution of plaintiff's attorney work product.  Certainly this cannot be considered a negative motivation.  In fact, any Court in this nation should consider such motivation to be commendable.  The only bad motivation involved, herein, is defendant's motivation to enhance his standing with White, Zuckerman in stealing plaintiff's confidential attorney work product, which is a motivation that should be roundly condemned by any Court in this nation.

4.  <u>Objective unreasonableness of the losing party's factual and legal arguments.</u>

As explained, although the Court decided that plaintiff's writing was not copyrightable, he had an objectively reasonable factual and legal argument regarding the right to pursue the claim.  Even defendant admits novel and complex issues were involved.  This Court, itself, has issued the same type of restraining order requested, including prohibiting access to web information.  Even as to the red herring issue of damages, plaintiff has an objectively reasonable argument for his position; although, the issues have not been clearly decided, and barely addressed by the Courts.  Even assuming, arguendo, his damages argument was not objectively reasonable, that does not mean his pursuit of the copyright claim was not objectively reasonable.  That is because, regardless of the damages remedy, plaintiff had the potential injunctive

21

remedy, even if, he suffered no damages.[16]

### 5. Need to advance compensation and deterrence.

There is no need for deterrence in an action which is motivated by an attorney's attempt to protect his attorney work product from being stolen, copies and distributed to those who do not have right to such.  There is no need to advance compensation to an unethical attorney who steals another attorney's confidential attorney work product and gives it to the adverse person who is the subject of the work product.[17] Also, since defendant has failed to provide the Rule 26 information, regarding insurance, there is no way of knowing to what extent, if any, defendant is actually liable for any attorney's fees.  Also, defendant has not provided his fee agreement to determine the basis, if any, of any obligation for attorney's fees.

DATED: March 21, 2011          Respectfully submitted,

_____/S_____

KENNETH M. STERN, PLAINTIFF PRO SE

---

[16]  Without any factual basis, the Court claimed all of he work plaintiff did in resolving the problem, which is a potential damages claim, were not compensable because plaintiff had no right to recover attorney's fees.  However, plaintiff's declaration in support of the opposition to summary judgment did not state such work was attorney work. In fact, not all such work was attorney work.

[17]  The procedural status upon which this case ended is that the Court was required to assume that the wrongful conduct did occur, with the Court ruling that even with such wrongful conduct, the copyright claim failed.

## DECLARATION OF KENNETH M. STERN

I Kenneth M. Stern, declare:

1. I am the plaintiff herein. I make this declaration of my personal knowledge, in support of my opposition to defendant's Motion for Attorney's Fees. If called upon to testify to the matters herein, I am competent to do so, and would do so.

2. Prior to defendant filing this motion, I was never contacted to participate in a meet and confer. As such, I never did participate in a meet and confer, regarding this motion.

3. I am representing a person whose very important trial starts. March 22, 2011. As a result of such, much of my time, for the past two weeks, has been spent preparing for his trial. As a result, I have not been able to spend as much time, or be as thorough, as I would have liked, in the preparation of this Opposition. That is part of the reason I am requesting oral argument. I am also requesting such so that I may address whatever defendant has to state in response to this opposition. If this Court is not going to allow oral argument, I would request to be allowed to file a reply to defendants response to this opposition. That is particularly true as I expect that, since defendants motion  points and authorities virtually merely refers to this Court's Summary Judgment/Attorney's fees orders, I anticipate defendant may raise matters which I have not had an opportunity to address.

Defendant's billing.

3. The scheduling conference hearing only took about 20 to 30 minutes, as reflected in the transcript, of that hearing, which is on file with this Court. It did not, as claimed by defendant, take in 1.6 hours as contended by defendant.

4. The summary judgment motion, in this case, only took about five to fifteen minutes. It did not take, as indicated by defendant, that such took in excess of two hours, as reflected by defendant. In fact, when I arrived at the court room, and hour before the hearing, to obtain the tentative ruling, Mr. Barrio was not there. (When I arrived, an hour before the hearing, I requested the tentative ruling. I was told by the clerk, there was none. It had been my intent to spend an hour analyzing such. I was

23

given the tentative ruling about 5 minutes before the hearing.  I barely had time to skim read it.  To properly analyze such, for oral argument, it would have taken about an hour.)

5.  Defendant claims time relating to batting helmets.  This case has nothing to do with batting helmets. (Plaintiff's Exhibit 1 p. 15.1)

6.  Defendant claims time relating to whether witness testimony of the speed of a vehicle is admissible.  This case has nothing to do with the speed of a vehicle. (Plaintiff's Exhibit 1 p. 15.1)

7.  The motion for reconsideration/amend had nothing to do with the copyright claim.   It had to do with reinstating the non copyright claim and seeking to add to claims.   The Court did discuss federal preemption of the copyright claim in its order denying the amendments.  However, that was not an issue that was addressed by defendant(s), whatsoever.  It was an issue raised in defendants behalf.  As such, it was not a matter, in relation to defendants work, that related, to the copyright claim.  This is further discussed in the Memorandum of Points and Authorities, herein.

8.   The Petition for Writ of Mandate was not a proceeding in this Court.  Defendant filed no opposition to the Writ.  Also, the writ had no relation to the copyright claim, herein. It related solely to the federal claims which this Court dis0missed, requesting the Ninth Circuit to either decide those issues, or stay this case until the Ninth Circuit decided certain cases pending before it.  Defendants billing shows a billing entry, regarding stay of proceedings, separate and apart from the substantive issues, the substantive issued which related to the non copyright federal claims, which were dismissed by the Court. (Plaintiff's Exh. 1 pp. 2-3.)

9.   The scheduling meeting of counsel was about 15 minutes to about 30 minutes at the most, not hours as claimed by defendant.

10.  Plaintiff does not recall a purported meeting with Mr. Farrel.  However, even if such occurred, it would have been, at most, one half hour, not several hours.  The most time that plaintiff has ever spent with Mr. Farrell, and the only matters that exceeded one hour, were his client's and plaintiff's depositions.

24

11. Defendant failed to participate in the procedures necessary to conduct the mediation as ordered by the Court. I documented this in a notice to the Court. Defendant seeks me to pay for defendant's own malfeasance, in not complying with the mediation requirements. (See Plaintiff's Exh. P. 15.1., Nov. 4, 2010 billing.)

12. I am certified as a specialist in appellate law by the State Bar of California Board of Specialization, as a specialist in appellate law. I have represented parties in approximately 400 state court appeals and 100 federal appeals.

13. In my opinion, the approximate 18.7 hours claimed to have been expended by defendant in the research and preparation of his fair use brief is exceedingly excessive. (See plaintiff's Exh. 1 pp. 19-20.) This should be compared to the approximate 16.2 hours spent by defendant in preparing the original Points and Authorities, which was actually less than 16.2; as, defendants billing shows some of this time was spent preparing parts of the Summary Judgment motion, other than the points and authorities. (Plaintiff's Exh. 1 pp. 11-14. )

<u>Timing of plaintiff giving defendant the involved writing.</u>

14. I sought to give defendant the writing, pursuant to a protective order, as early as, September, 2009.  (See Exh. 8.) I offered to conditionally give him the writing by the following letter:

"

KENNETH M. STERN
5850 Canoga Avenue, Fourth Floor
Woodland Hills, Ca. 91367
818 716-1101

September 17, 2009

Adrian Barrio,
MURCHISON & CUMMINGS

facsimile transmission to (213) 623-6336

Re: Stern v. Robert Weinstein:

Dear Mr. Barrio:

**Also, please be aware I will be seeking to file, under seal, the actual content of my writing with a protective order that none of the defendant's or defense counsel can quote it, paraphrase it, or otherwise describe the actual content, etc.,**

25

**without further order of the Court. Of course, your client already knows the content, as, he obtained it, copied it and distributed it, through his sister, to White, Zuckerman. Please let me know if you are agreeable to such an order of the Court.**

By:_____ " (emphasis added)
       Kenneth M. Stern.

15.  Shortly thereafter, I again offered the writing to defendant, upon protective conditions:

"KENNETH  M.  STERN
5850 Canoga Avenue, Fourth Floor
Woodland Hills, Ca. 91367
818 716-1101

September 29, 2009

Adrian Barrio,
MURCHISON & CUMMINGS

facsimile transmission to (213) 623-6336

Re: Stern v. Robert Weinstein:

Dear Mr. Barrio:

As the White, Zuckerman defendants have set their Motion to Dismiss on November 16, 2009, this is to inquire as to whether you are agreeable to stipulating to have your motions continued to such date.

I am planning on renewing the application, upon regularly noticed time, to have my writing sealed, which *will allow me to provide you such, under the sealed conditions*. As such, by continuing your motions until the November 16, date, provided my motion is granted, *you would then have my writing, which you could use, in your reply to my opposition to the motion, subject to the sealing conditions.*

Please let me know by Friday regarding whether you agree to such continuance.

Thank you for your attention to this matter.

By:_____ " (emphasis added)
       Kenneth M. Stern.

15.  I was more than happy to give defendant the writing, a shown by the above letters.  In fact, I specifically stated, that if the protective order was agreed to, I could then give the defendant the writing, which he could use in a motion.  I merely wanted such done under a confidentiality protective order.  The reason for such is I felt that

26

I should not have to make my attorney work product part of a public record, until, and if, it was absolutely necessary to do so.  Defendant never agreed to a protective order. Defendant's claim that I did not give him the writing was to avoid a summary judgment is wholly false and made up.  I did not give it to them because I was under no legal compulsion to do so, and, I wanted to protect my work product from having to be publicly disclosed.  Had defendant agreed to a protective order he could have then used it to do whatever he wanted, so long as it was done under seal, as would be the situation with a trade secret.  I was not trying to wrongfully delay, obfuscate, etc. anything.

16.  It was never my intent or desire to prevent defendant from seeing the writing.  I merely wanted to be under conditions where my right to have my work product not disclosed was protected.

17.    Defendant's billing shows the reason that he refused to agree to the protective order was because he hoped that forcing me to produce it, without a protective order, was cause me to waive my attorney client privilege.  Defendant billed for researching the issue of whether my production of the document waived the attorney client privilege.

18.  The Court ruled, in its motion denying dismissal of the copyright claim, that such did not have to be quoted in the complaint, which was before the scheduling conference.

19.  At the scheduling conference meeting I told Mr. Barrio I would give him my involved writing if he would agree to the protective order.  He refused to agree.

20.  I properly served my Rule26 disclosure, which included the category of the involved writing herein, which was before the scheduling conference.  (Exhibit Three.)  Defendant did not timely serve a Rule 26 motion.  When he did serve such, it did not contain the required insurance information.  (Exhibit 4 )  Mr. Barrio promised me he would provide me with such information.  (Exhibit 5.)   He then reneged on that promise with the excuse he was not going to provide any information because the insurer purportedly denied coverage.  I have never had the opportunity

to review the policy to determine whether or not the matter is covered.

21. At the time of the scheduling conference, defendant has not served any discovery, including discovery to obtain plaintiff's writing herein.

22. As result of the facts stated in 18, 20, 21 above, at the time of the scheduling conference, I was under no legal obligation to give defendant my writing.

22. The Court denied my motion for a protective order, without prejudice regarding the disclosure of my writing, due to the very fact that, at the time, I was under no obligation to provide it, to defendant(s). The Court had earlier denied such, without prejudice, because it was sought ex parte instead of on regularly noticed motion. On neither occasion was it denied because that type of protective order could not be granted.

23. Regardless of the comment, in the Order on Summary Judgment/Attorney's fees that they type of protective order I requested could not be granted, whether or not the Court is or is not right, it was, and is, my belief that such a protective order could have been granted. In fact, while I do not have it available, I have reviewed an order, signed by the Magistrate Judge, in a case being determined Judge Gee, that did grant an extensive protective order, similar to the one that I sought. If I can find that, I will provide it.

24. This court criticized me, as early as the scheduling conference hearing, for not giving defendant(s) the writing; although, I was not under any obligation to provide such, and in particular, defendant(s) had failed to even serve discovery to obtain such.

25. Defendant Robert Weinstein did not serve discovery, upon me, to obtain my writing, until July 9, 2010. (Exh. 6.)

26. I served my response, one day early, on August 11, 2010. I objected to the production on various grounds. (Exh. 7.)

27. According to Robert Weinstein's counsels billing statement, my said response was not reviewed, by defense counsel, until August 24, 2010. Thus, even if I had provided my writing, in the response, it would not have been reviewed, by

28

defense counsel, until August 24, 2010. (Plaintiffs Exh. 1. p. 11.)

28.  On August 25, 2010 I took the deposition of Venita McMorris.  At that deposition I gave all counsel a copy of my writing, which is the subject of this action. As such, there was only one day delay, between the date that defendant would have reviewed such, had I provided such in discovery, and the date the document was provided.  As such, even assuming my objections to production of the documents was note correct, there was only one days difference in the time within which defendant would have viewed the document, and the day in which they reviewed it at the McMorris deposition.

29.  The only reason for any delay, in my giving the defendants my writing, was my desire, and belief, that I should not have to make my attorney work product a matter of public record, unless absolutely necessary, in order to protect my rights in my attorney work product.  Eventually, I revealed such because I decided the time, effort  and expense, to continue to try and obtain a protective order, in light of the impending deposition of Venita McMorris, and close of discovery, was, upon balance, no longer the priority.

Purpose for pursuing copyright claim.

30.  Obtaining injunctive relief from any future thefts, by Robert Weinstein, who as of at least a week ago, was still a member of the CAALA listserve, of my work product was the primary motivation in pursuing the copyright claim.  Any claim to monetary damages, if any, was wholly collateral and secondary to obtaining injunctive relief.  Having an attorney, or anyone, steal my work product, and give it to the adverse subject of the work product, is an interference with, and has a chilling effect upon, my right to be a vigorous advocate for my clients.  I might also note that, in terms of the amount of over billing, of which I was concerned was occurring, by White, Zuckerman, such had nothing to do with my wallet. Whatever the billing was, my client, not I, was ultimately responsible for the payment of such.  I could have just had the over billing slide and had my client pay it.  However, it is my duty to protect my clients' interests, which is what I was doing.

31.  Regarding the Court's comment that my writing was potentially libelous, it was not even close to such.  I had a concern about White, Zuckerman and was merely seeking information regarding those concerns.  I merely asked if anyone had any experience with them in over billing or churning cases.  I did not accuse them of such.  Furthermore, even if I had, I have a right to express my opinion, which is not libelous.  The fact of the matter is they did try and churn and bill the case.  The truth is no liable.  White, Zuckerman has history of wrongful conduct,   They presently have an approximate $3,400,00.00 judgment against them, in the California Superior Court, which they are appealing, for essentially wrongfully and surreptitiously entering someone's business, misappropriating boxes of his     private business documents, copying them, then surreptitiously putting the documents back.  I even know someone, who indicated, to me, she received a bill from White, Zuckerman, concerning her marriage dissolution; although, she had never hired them.  During the pendency of this action I even received a false bill from White, Zuckerman, for something which they had no right to bill.

Damages claims.

32.  In having to deal with the violation of my copyright, I have experienced aggravation of the then arthritis in my right hip, which resulted in excess pain in the hip and leg and a decrease in the range of motion in my leg and hip.  This is what I wrote in my opposition to the summary judgment motion.  It is absolutely true.

33.  In having to deal with the violation of my copyright, and the notion of my writing being copied and distributed, without my consent, I have experienced emotional distress which has included insomnia.    This is what I wrote in my opposition to the summary judgment motion.  It is absolutely true

34.  I have never done anything, in this action, for which I did not believe, after, research, review and analysis, that I had, at minimum, an arguably meritorious position.

35.  The exhibits submitted herewith are true and correct copies of the documents, or portions thereof, which they purport to be.  Exhibit One has some of

30

my notations on it.  However, the lack of other notations does not indicate said exhibit does not reflect other improper billing entries.  I have not had the time to analyze each and every of defendant's billing entries to determine its reasonableness, or lack thereof.

I declare under penalty of perjury, pursuant to the laws of the United States of America, the foregoing is true and correct.  Executed this 2$^{1st}$ day of March , 2011 in Los Angeles, Ca.

/S
DECLARANT, KENNETH M. STERN

31